**SHANE LAW**
David R. Shane (CA State Bar No. 109890)
1000 Drakes Landing Rd #200
Greenbrae, CA 94904-3027
Telephone: (414) 464-2020
Facsimile: (415) 464-2024
dshane@shanelaw1.com

**HART McLAUGHLIN & ELDRIDGE LLC**
Brian Eldridge (CA State Bar No. 220822)
Jack Prior (Pro Hac Vice To Be Submitted)
22 West Washington St., Suite 1600
Chicago, Illinois 60602
Telephone: (312) 955-0545
Facsimile: (312) 971-9243
beldridge@hmelegal.com
jprior@hmelegal.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TISHA HILARIO, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant | Case No.:<br><br>CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |

## **CLASS ACTION COMPLAINT AT LAW**

Plaintiff Tisha Hilario, individually and on behalf of a class of all others similarly situated, by and through their attorneys, Shane Law and Hart McLaughlin & Eldridge, LLC, hereby bring a Class Action Complaint at Law against Allstate Insurance

Company ("Allstate"). Plaintiff alleges as follows based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including the investigation of Plaintiff's counsel and consultants, unless stated otherwise.

I.    **NATURE OF ACTION**

1.    Since at least January 2019, Allstate has been overcharging California policyholders by inflating the square footage of their homes in premium calculations. Allstate is well-aware that it has been doing so, but has failed to rectify its practices and, instead, has elected to continue taking unjust and unwarranted overcharges from its unwitting policyholders. While discovery will reveal the full amount of money Allstate has misappropriated, Plaintiff believes it to be in excess of $10,000,000.00.

2.    Plaintiff brings this action on behalf of herself and all other similarly situated for damages and other legal and equitable remedies resulting from the wrongful actions of Allstate. This is a class action brought on behalf of other similarly situated home insurance policyholders who have been harmed by Allstate.

//

## II.    PARTIES

3.    Plaintiff Tisha Hillario is, and at all times alleged in this Class Action Complaint was, a resident of San Francisco County, California located in the Northern District of California. Plaintiff is a policyholder of an Allstate insurance policy and the address on Plaintiff's homeowners policy is located in San Francisco County, California. At all material times, Plaintiff had homeowners insurance that was produced and underwritten by Allstate and sold to her through Allstate agents managed, supervised, and controlled by Allstate.

4.    Defendant Allstate is, and at all times alleged in this Class Action Complaint was, an Illinois corporation, having its principal place of business in Northbrook, Illinois. Allstate has been and is authorized to do business in the State of California. At all relevant times, Allstate has been and is transacting the business of insurance in the State of California and the basis of this suit arises out of said conduct.

## III.    JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005, because: (i) there are more than 100 members of the Class; (ii) the aggregate amount in

controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (iii) at least one plaintiff and defendant are citizens of different states.; and (iv) none of the exceptions under the subsection apply to this action.

6.      This court has personal jurisdiction over Allstate because Allstate is registered to do business in California, has sufficient minimum contacts in California, and otherwise intentionally avails itself of the markets within California through its business activities, such that the exercise of jurisdiction by this Court is proper and necessary. Moreover, the claims of Plaintiff and all of the class members in this case, who are current or former Allstate policyholders subject to Allstate's conduct alleged herein, arise out of and directly relate to Allstate's contacts with California.

7.      Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and the substantial part of the property that is subject to the action is situated in this District.

//

## IV.    <u>ALLEGATIONS OF FACT</u>

8.    Allstate represents that its "home insurance is more than quality coverage for your space."[1] But in California, Allstate charges its policyholders premiums for more space than they actually have.

9.    Allstate is one of the largest insurers in the United States with almost $40 billion in revenues in 2018 with 16 million customers. Specific to California, Allstate insured 666,580 dwellings in California in 2018.[2]

10.    For a homeowner's policy with Allstate in California, Allstate agrees to provide coverage for the policyholder in exchange for the payment of a premium.

11.    Allstate defines an insurance premium as "the amount you pay to your insurer regularly to keep a policy in force."[3]

12.    Allstate calculates the premium to be paid by the policyholder based on the "Total Finished Living Area" and "Total Living Area" of the property. The larger the Total Finished Living Area and Total Living Area, the higher the premium that the policyholder is charged and has to pay.

_____

[1] *See* https://www.allstate.com/home-insurance.aspx (last accessed July 29, 2020)
[2] *See* https://www.allstatesustainability.com/wp-content/uploads/materials/reports/2018_Allstate_CR_CA.pdf (last accessed July 29, 2020)
[3] *See* https://www.allstate.com/tr/insurance-basics/premium-limit-deductible.aspx (last accessed July 29, 2020)

CLASS ACTION COMPLAINT JURY TRIAL DEMANDED - 5

13.    The Total Finished Living Area is the area of the property intended for human occupancy and, thus, should not include built-in garages. The Total Living Area is the sum of the Total Finished Living Area and the built-in garage. Thus, in general, the equation should be:

*Total Finished Living Area + Built-In Garage = Total Living Area*

14.    Allstate, however, has and continues to wrongfully include built-in garages in the calculation of the Total Finished Living Area, thereby causing policyholder premiums to be artificially increased. Said another way, Allstate is using the following formula:

*Total Finished Living Area (including Built-In Garage) +*

*Built-in Garage = Total Living Area*

15.    In other words, Allstate improperly includes a built-in garage at least twice when calculating a policyholder's premiums. Consequently, California policyholders have been and continue to pay Allstate artificially inflated premiums.

16.    Allstate also offers companion earthquake coverage known as CEA earthquake policy. The larger the Total Finished Living Area and Total Living Area, the higher the premium owed for CEA earthquake policy.

//

17.     Thus, by artificially increasing the Total Finished Living Area and Total Living Area, as discussed above, Allstate also increased the premiums that policyholders were charged and had to pay for their CEA earthquake policies.

### A. PLAINTIFF'S EXPERIENCE

18.     Plaintiff Tisha Hilario contracted with Allstate for a homeowners policy in California. The contract is Policy Number 914 140 656 (hereinafter, "Plaintiff's Policy"). Attached as Exhibit A is Plaintiff's Policy Declarations and the Allstate Insurance Company Deluxe Homeowners Policy Form AP2.

19.     As reflected in the Renewal Deluxe Homeowners Policy Declarations of Plaintiff's Policy, Allstate states there is an "Attached structure" and "one 1-car built-in garage" with a total of "1438 sq. ft."

20.     However, the Total Finished Living Area of Plaintiff's home is approximately 862 square feet, and her garage is 288 square feet by a default calculation for single-car garages as determined by Allstate. Thus, if Allstate was applying the proper formula, Plaintiff's premium would be calculated as 1154 square feet: 862 + 288 = 1154.

21.     Allstate, however, counted the one-car built-in garage twice in its calculation:  288 + 288 + 862 = 1438.

//

22.    Allstate based its calculation of the premium on the inflated Total Living Area and Total Finished Living Area and, as a result, wrongfully charged an unjustly higher premium to Plaintiff, which Plaintiff has paid and Allstate has received and retained.

V.    **CLASS ALLEGATIONS**

23.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) Plaintiff brings this action against Defendant on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed **Class** is defined as follows:

> All Allstate California policyholders from August 5, 2016 to the present with at least one built-in garage who paid premiums for homeowners or renters insurance to Allstate.

And the proposed **Subclass** is defined as follows:

> All class members who had earthquake coverage in California.

//

CLASS ACTION COMPLAINT JURY TRIAL DEMANDED - 8

24. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

25. The class period is limited by the applicable statute of limitations for the causes of action.

26. Plaintiff reserves the right to propose further subclasses of the above class and subclasses or to narrow the above class and subclass definitions based on the evidence adduced in discovery, or as necessary and appropriate.

27. In each of the causes of action pled below, a statement that the count is alleged on behalf of a Class includes the Subclass.

28. This action has been brought and may properly be maintained as a class action against the Defendant pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is readily ascertainable.

29. Plaintiff meets the prerequisites of Federal Rule of Civil Procedure 23(a) to bring this action.

30.     <u>Numerosity</u>: Pursuant to Federal Rule of Civil Procedure 23(a)(1), the Class is so numerous that joinder of all members is impracticable. While the exact number of class members cannot be determined without discovery, the Class and Subclass are believed to consist of at least thousands of Allstate homeowner policyholders. The exact number of class members can readily be ascertained upon review of policy information and other records maintained by Allstate. The disposition of the claims in a class action rather than in individual actions will benefit the parties and the courts.

31.     <u>Commonality</u>: Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law or fact common to the Class. Common questions of law and fact exist as to the claims of Plaintiff and the other class members. Common questions of the Class include, but are not limited to, the following:

a.  Whether Defendant engaged in the conduct alleged;

b.  Whether Defendant calculated Finished Living Area by including square footage for built-in garages in the calculation;

c.  Whether Defendant calculated Total Living Area by including square footage for built-in garages *more than once*;

d.  Whether Defendant calculated, charged, received and/or retained premiums based upon Total Finished Living Area;

CLASS ACTION COMPLAINT JURY TRIAL DEMANDED - 10

e.  Whether Defendant calculated, charged, received and/or retained premiums based upon Total Living Area;

f.  Whether Defendant breached its contract with Plaintiff and the members of the Class by charging a premium based upon an inaccurately calculated Total Living Area and/or Total Finished Living Area;

g.  Whether Defendant breached the implied covenant of good faith and fair dealing in its handling of the premium calculation, charging, receipt and retention;

h.  Whether Defendant had actual or constructive knowledge of the premium overcharges resulting from the double counting of the garage space.

i.  Whether Defendant committed unfair business practices in its handling of the premium calculation, charging, receipt and retention; and

j.  Whether Plaintiff and the members of the Class are entitled to compensatory, declaratory and/or injunctive relief.

32.  <u>Typicality</u>: Pursuant to Federal Rule of Civil Procedure 23(a)(3), the claims or defenses of the representative parties are typical of the claims or defenses of the Class. Plaintiff's claims are typical of the claims of the Class they seek to represent because the factual and legal bases of Defendant's liability to Plaintiff and the other class members is the same, and because Defendant's

conduct has resulted in similar injuries to Plaintiff and to the Class. The legal theories under which the Plaintiff seeks relief are the same or similar to those on which all members of the Class will rely, and the harms suffered by Plaintiff is typical of the harms suffered by the members of the Class.

33.    Adequacy: Pursuant to Federal Rule of Civil Procedure 23(a)(4), the representative parties will fairly and adequately protect the interests of the class. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class she seeks to represent. Their interests are the same as those of the other members of the Class. Plaintiff has retained competent counsel with substantial experience in prosecuting complex litigation and class actions in state and federal court. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to any member of the Class.

34.    Superiority: There is no plain, speedy or adequate remedy other than by maintenance of this class action. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would

engender. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Furthermore, as the damages suffered by each individual Class Member may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Moreover, upon information and belief, many members of the Classes are not aware of the fact that Defendant committed legal wrongs and that they have the right to seek legal remedies.

35.    The elements of Federal Rule of Civil Procedure 23(b)(2) are met. The prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudications, which could establish incompatible standards of conduct for Defendant. The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests. Absent injunctive relief, Allstate will continue to commit the violations alleged. Allstate has acted

on grounds that apply generally to class members so that final injunctive relief or corresponding declaratory relief is appropriate for the Class.

36.    The elements of Federal Rule of Civil Procedure 23(b)(3) are met. Questions of law or fact common to the respective members of the Class predominate over any questions affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery. The class action is a superior method for the adjudication of the controversy in that it will permit a larger number of claims to be resolved in a single forum simultaneously, efficiently and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and the burden of courts that individual actions would create. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

CLASS ACTION COMPLAINT JURY TRIAL DEMANDED - 14

37.    In the alternative, Plaintiff seeks class certification as to particular issues permitted under Federal Rule of Civil procedure 23(c)(4). Plaintiff seeks certification as to the common questions listed in Paragraph 31 *supra*. Plaintiff respectfully maintains that class certification as to those issues is appropriate because certification as to particular issues is superior to any alternative means of adjudication as it eliminates the possibility of duplicative, inefficient litigation of identical issues. Resolution of these matters would materially advance the litigation.

## VI.    CAUSES OF ACTION

### COUNT I:

### BREACH OF CONTRACT

38.    Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 – 37 as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the Class.

39.    Plaintiff and the members of the Class entered into form insurance contracts with Defendant. Under the terms of the contract, Plaintiff and the members of the Class would pay Defendant premiums. In exchange, Defendant would provide Plaintiff and the members of the Class insurance coverage. The

parties contracted such that "the premium for the policy is based on information you have given us."

40.     Plaintiff and the members of the Class performed their obligations under the contract by paying Defendant all premiums and performing all obligations under the policy.

41.     Defendant contracted that the premium will be based on the information supplied by the policyholders. Instead, however, the premium was based on a Defendant's false and wrongful calculations.

42.     Defendant charged premiums wrongfully based upon information not provided by Plaintiff and the members of the Class but rather based upon Defendant's false calculations. In so doing, Defendant failed to perform its obligations under the contract and thereby breached the contract with Plaintiff and the members of the Class.

43.     Plaintiff and the members of the Class suffered damages as a direct and proximate result of Defendant's breach.


## COUNT II:

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

44.    Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 – 43 as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the Class.

45.    Plaintiff and the members of the Class executed contracts with Defendant to provide insurance coverage to Plaintiff and the members of the Class in exchange for the payment of premiums.

46.    This contract was subject to an implied covenant of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties – both explicit and fairly implied – and not to impair the rights of other parties to receive the rights, benefits and reasonable expectations under the contracts. These included the covenant that Defendant would act fairly and in good faith in carrying out its contractual obligations to provide Plaintiff and the members of the Class with insurance and charge Plaintiff and the members of the Class accurately calculated premiums.

47.    When Allstate issued the insurance policies, they undertook and were bound to the covenants implied by law that they would deal fairly and in good faith with Plaintiff and the members of the Class, and not engage in any acts, conduct, or omissions that would impair or diminish the rights and benefits due Plaintiff and the members of the Class, according to the terms of the policies.

48.    Allstate breached the implied covenant of good faith and fair dealing arising out of the policies by unreasonably and in bad faith charging Plaintiff and the members of the Class inflated premiums based upon artificially increased calculations of the Total Living and Total Finished Living Area of the insured properties.

49.    Plaintiff and the members of the Class met all or substantially all of its contractual obligations, including by paying all the premiums required by Defendant.

50.    Defendant's failure to act in good faith in providing insurance coverage in exchange of an accurately calculated premium denied Plaintiff and the members of the Class the full benefit of the bargain.

51.    Defendant's conduct was unreasonable or without proper cause.

52.    Defendant's acted with malice or oppression. Defendant's conduct was despicable and conducted with conscious disregard of the rights of the Plaintiff and the members of the Class. Even when this wrongful conduct was brought to Defendant's attention, Defendant failed to rectify the wrongful conduct.

//

53.     Plaintiff and the members of the Class have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and is entitled to damages in an amount to be proven at trial.

## COUNT III:

## UNFAIR BUSINESS PRACTICES UNDER BUS. & PROF. CODE § 17200, et seq.

54.     Plaintiff re-allege and incorporate by reference the allegations in Paragraphs 1 – 54 as if fully set forth herein. Plaintiff bring this claim individually and on behalf of the members of the Class.

55.     California's Unfair Competition Law, as codified by California Business & Professions Code sections 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumer falls within the scope of California's Unfair Competition law.

56.     Defendant's acts and practices constitute unlawful or unfair business practices against Plaintiff and the members of the Class in violation of California Business and Professions Code section 17200, *et seq.*

57.     These acts include but are not limited to charging Plaintiff and the members of the Class premiums based upon falsely inflated and/or miscalculated square footage. Defendant's acts and practices are immoral, unethical, oppressive, unconscionable and/or substantially injurious to Plaintiff and the members of the Class.

58.     Defendant perpetrated these acts and practices against Plaintiff and the members of the Class, and as direct and proximate result of the foregoing, Plaintiff and the members of the Class have suffered and continued to suffer damages in a sum which is, as of yet, unascertained.

59.     Pursuant to California Business and Professions Code section 17203, Plaintiff and the members of the Class are entitled to restitution of all the monies paid to Defendants for retaining benefits that were due and owing to Plaintiff and the members of the Class (with interest thereon), to disgorgement of all Defendant's profits arising out of their unlawful conduct (with interest thereon), and to be paid benefits due to Plaintiff and the members of the Class under the policy that Defendant wrongfully retained by means of its unlawful business practices.

60.     Pursuant to California Code of Civil Procedure section 1021.5, Plaintiff and the members of the Class are entitled to recover their reasonable

attorney's fees in connection with the unfair competition claims, the substantial benefit doctrine and/or the common fund doctrine.

61.    Equity requires that Defendant refund the portion of the premium attributed to the square footage of Furnished Living Space that did not exist.

## VII.    REQUEST FOR RELIEF

62.    Plaintiff Tisha Hilario, individually and on behalf of the members of the Class, demands the following relief on behalf of herself and all others similarly situated:

a.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23, specifically:

  i.    A damages class pursuant to Federal Rule of Civil Procedure 23(b)(3) or, in the alternative, an issues class pursuant to Federal Rule of Civil Procedure 23(c)(4);

  ii.    An injunctive and declaratory relief class pursuant to Federal Rule of Civil Procedure 23(b)(2);

b.    An order appointing Plaintiff as class representatives and appointing the undersign as class counsel to represent the Class pursuant to Federal Rule of Civil Procedure 23(g);

c.    An order declaring that:

    i.  Defendant has wrongfully overcharged policyholders for premiums;

    ii.  Defendant has wrongfully retained money paid by policyholders that were overcharged for premiums;

d.  An order enjoining Defendants from:

    i.  Wrongfully overcharging premiums to Plaintiff and the Class;

    ii.  Wrongfully retaining the money received for overcharging premiums to Plaintiff and the Class;

e.  An order for an award of compensatory damages and statutory damages;

f.  An order for an award of punitive damages;

g.  An order for pre-judgment and post-judgment interest;

h.  An order for an award of reasonable attorneys' fees and expenses; and

i.  An order for all such other relief that the Court deems just and equitable.

## VIII.  <u>JURY DEMAND</u>

63.    Plaintiff, individually and on behalf of all those similar situated, demands a trial by jury of all issues so triable herein.

//

Dated: August 5, 2020                    Respectfully submitted,


                                         **SHANE LAW**

                                         

                           By:           _____
                                         David R. Shane, Esq.
                                         One of the Attorneys for Plaintiff, individual
                                         and on behalf of all others similar situated


                                         **HART McLAUGHLIN & ELDRIDGE LLC**



                           By:           _____
                                         Brian Eldridge, Esq.
                                         One of the Attorneys for Plaintiff, individual
                                         and on behalf of all others similar situated

                                         *Attorneys for Plaintiff and the Class*



# EXHIBIT A

# Renewal Deluxe Homeowners Policy Declarations



You're in good hands.

Your policy effective date is February 27, 2020

Page **1** of 4

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for property insured | $821.00 |
| **Total** | **$821.00** |

*Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).*

*See the **Important Payment and Coverage Information** section for details about installment fees.*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | 5% | Claim Free | 15% |

## Location of property insured

128 Gambier St, San Francisco, CA 94134-1023

## Rating Information*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X72025-1) for additional coverage information. Contact us if you have any changes.

The dwelling is of frame construction and is occupied by 1 family

**Dwelling Style:**
Built in 1941; 1 family; 1438 sq. ft.; 2 stories

**Foundation:**
Slab at grade, 100%

**Degree of slope:**
0-15 Degrees*
* Assumption based on your foundation type.

**Attached structure:**
One 1-car built-in garage

**Interior details:**
One builders grade kitchen          One builders grade half bath
One builders grade full bath        One softwood straight staircase

**Interior – floorings*:**
80% Hardwood flooring               10% ceramic tile flooring
10% wall to wall carpet flooring
   (acrylic/nylon)

**Interior – ceiling*:**
Drywall ceiling, 100%

Information as of January 7, 2020

## Summary

Named Insured(s)
**Philip Bettney, Tisha Hilario**
Mailing address
**128 Gambier St**
**San Francisco CA 94134-1023**

Policy number
**914 140 656**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **February 27, 2020** through
**February 27, 2021** at 12:01 a.m. Pacific
Time, and continues until cancelled

Premium period
Beginning **February 27, 2020** through
**February 27, 2021** at 12:01 a.m. Pacific
Time

Your Allstate agency is
**Steve Mahoney**
380 W Portal #D
San Francisco CA 94127
(415) 681-7120
SteveMahoney@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

*(continued)*

CA070RBD



Renewal Deluxe Homeowners Policy Declarations
Policy number:    **914 140 656**
Policy effective date:    February 27, 2020

## Rating Information* (continued)

**Interior – wall coverings*:**
Painted walls, 90%                          Sheet paneling wall covering, 5%
Vinyl wallpaper covering, 5%
*Assumptions are based on the age, style, and location of your home unless
specified by the customer.

**Exterior wall type:**
100% wood siding

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Gas heating, 100%

**Additional details:**
Standard wood sash with glass, 100%    Interior wall height – 8 ft, 100%
Two exterior wood doors
Interior sprinkler systems, 100%

**Fire protection details:**
Fire department subscription – no        150 ft. to fire hydrant
1 mile to fire department

**Roof surface material type:**
Composition
▪ 10% asphalt / fiberglass shingle

Other
▪ 90% built-up / tar and gravel        ▪ One small skylight

*This is a partial list of property details. If the interior of your property includes custom
construction, finishes, buildup, specialties or systems, please contact your Allstate
representative for a complete description of additional property details.*

## Mortgagee

CENTRAL LOAN ADMIN & REPORTING ISAOA ATIMA
P O Box 202028, Florence, SC 29502-2028
Loan number: 1124427680

## Additional Interested Party

None

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits | $335,608 | ▪ $2,500 Wildfire<br>▪ $2,500 All other perils |

010 070 074
200108SD03859

Renewal Deluxe Homeowners Policy Declarations
Policy number:     **914 140 656**
Policy effective date:     February 27, 2020

Page **3** of 4



You're in good hands.

| | | |
|---|---|---|
| Other Structures Protection | $33,561 | ▪ $2,500 Wildfire<br>▪ $2,500 All other perils |
| Personal Property Protection - Reimbursement Provision | $234,926 | ▪ $2,500 Wildfire<br>▪ $2,500 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $67,122 | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Building Codes | $33,561 | |
| Workers' Compensation and Employers' Liability Coverage for Residence Employees | Statutory/See Form | |

▶ *Other Coverages Not Purchased:*

- Business Property Protection*
- Business Pursuits*
- Cellular Communication System*
- Electronic Data Processing Equipment*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*

- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fire Department Charges*
- Golf Cart*
- Home Day Care*
- Incidental Office, Private School Or Studio*

- Increased Coverage on Money*
- Increased Coverage on Securities*
- Increased Silverware Theft Limit*
- Lock Replacement*
- Loss Assessments*
- Satellite Dish Antennas*

*\* This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

*The limit of liability for this structure (Coverage A-Dwelling Protection) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home.*

*This policy does not cover earth movement including earthquake.*

*You have elected not to purchase a CEA earthquake policy.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

CA070RBD



Renewal Deluxe Homeowners Policy Declarations
Policy number: 914 140 656
Policy effective date: February 27, 2020

# Your policy documents

Your Homeowners policy consists of the Policy Declarations and the following documents. Please keep them together.

- Deluxe Homeowners Policy – AP2

- Lender's Loss Payable Endorsement – AU319

- Amendment of Policy Provisions – AP425

- California Standard Fire Policy Provisions – AP1862-1
- Marijuana Amendatory Endorsement – AVP504

- California Deluxe Homeowners Amendatory Endorsement – AP2237

- California Deluxe Plus And Deluxe Homeowners Policy Amendatory Endorsement – AP29-4
- California Deluxe Homeowners Amendatory Endorsement – AP4482-2
- Building Structure Reimbursement Extended Limits Endorsement – AP445
- Wildfire Deductible Endorsement – AP4886
- California Workers' Compensation And Employers' Liability Coverage For Residence Employees Coverage Form – AP1127

# Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Coverage A - Dwelling Protection includes an approximate increase of $68,877 due to the Property Insurance Adjustment provision using the Marshall Swift Boeckh Publications Building Cost Index. Coverage C - Personal Property Protection adjusted accordingly.

▶ Please note: This is not a request for payment.  Your bill will be mailed separately.

▶ If you decide to pay your premium in installments, there will be a $3.50 installment fee charge for each payment due. If you make 12 installment payments during the policy period, and do not change your payment plan method, then the total amount of installment fees during the policy period will be $42.00.

If you are on the Allstate® Easy Pay Plan, there will be a $1.00 installment fee charge for each payment due. If you make 12 installment payments during the policy period, and remain on the Allstate® Easy Pay Plan, then the total amount of installment fees during the policy period will be $12.00.

If you change payment plan methods or make additional payments, your installment fee charge for each payment due and the total amount of installment fees during the policy period may change or even increase.

Please note that the Allstate® Easy Pay Plan allows you to have your insurance payments automatically deducted from your checking or savings account.

Allstate Insurance Company's Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Thomas J. Wilson
President

Susan L. Lees
Secretary

# Allstate Insurance Company
# Deluxe
# Homeowners
# Policy

**Policy:**

**Effective:**

**Issued to:**



Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company---Home Office: Northbrook, Illinois 60062

AP2

*Table of Contents*

*General*

Definitions Used In This Policy..............................2
Insuring Agreement...............................................3
Agreements We Make With You ..........................4
Conformity To State Statutes ................................4
Coverage Changes ................................................4
Policy Transfer ......................................................4
Continued Coverage After Your Death ..................4
Cancellation ...........................................................4
Concealment Or Fraud ...........................................5

*Section I — Your Property*
*Coverage A*

*Dwelling Protection*

Property We Cover Under Coverage A ...................5
Property We Do Not Cover Under Coverage A.......5

*Coverage B*
*Other Structures Protection*

Property We Cover Under Coverage B ....................5
Property We Do Not Cover Under Coverage B.......5
Losses We Cover Under Coverages A and B...........5
Losses We Do Not Cover Under
   Coverages A and B .........................................6

*Coverage C*
*Personal Property Protection*

Property We Cover Under Coverage C ....................8
Limitations On Certain Personal Property ..............8
Property We Do Not Cover Under Coverage C .......9
Losses We Cover Under Coverage C .......................9
Losses We Do Not Cover Under Coverage C........10

*Additional Protection*

Additional Living Expense....................................12
Credit Card, Bank Fund Transfer Card,
   Check Forgery and Counterfeit Money ............12
Debris Removal......................................................13
Emergency Removal Of Property ..........................13
Fire Department Charges .......................................13
Temporary Repairs After A Loss ..........................13
Trees, Shrubs, Plants and Lawns...........................13
Temperature Change...............................................13
Power Interruption.................................................13
Arson reward..........................................................14
Collapse..................................................................14
Land........................................................................14

*Section I Conditions*

Deductible..............................................................14
Insurable Interest and Our Liability .....................14
What You Must Do After A Loss ...........................14
Our Settlement Options .........................................15
How We Pay For A Loss.........................................15
Our Settlement Of Loss .........................................17
Appraisal................................................................17
Abandoned Property...............................................17
Permission Granted To You....................................17
Our Rights To Recover Payment............................17
Our Rights To Obtain Salvage...............................17
Suit Against Us ......................................................18
Loss To A Pair Or Set............................................18
Glass Replacement.................................................18
No Benefit To Bailee .............................................18
Other Insurance......................................................18
Property Insurance Adjustment .............................18
Mortgagee ..............................................................18

*Section II — Family Liability and*
*Guest Medical Protection*

*Coverage X*
*Family Liability Protection*

Losses We Cover Under Coverage X .....................19
Losses We Do Not Cover Under Coverage X ........19

*Coverage Y*
*Guest Medical Protection*

Losses We Cover Under Coverage Y .....................21
Losses We Do Not Cover Under Coverage Y ........21

*Additional Protection*

Claim Expenses......................................................22
Emergency First Aid ..............................................23
Damage To Property Of Others .............................23

*Section II Conditions*

What You Must Do After An Accidental Loss........23
What An Injured Person Must Do — Coverage Y
   Guest Medical Protection..................................23
Our Payment of Loss — Coverage Y
   Guest Medical Protection..................................23
Our Limits Of liability ..........................................23
Bankruptcy.............................................................24
Our Rights To Recover Payment — Coverage X
   Family Liability Protection ...............................24
Suit Against Us ......................................................24

Other Insurance—Coverage X—
    Family Liability Protection...............24

***Section III — Optional Protection***

***Optional Coverages You May Buy***
Coverage BC
Building Codes.............................24
Coverage BP
Increased Coverage On Business Property...........24
Coverage DP
Increased Coverage On Electronic
    Data Processing Equipment.....................24
Coverage F
Fire Department Charges.......................24
Coverage G
Loss Assessments .........................25
Coverage J
Extended Coverage On Jewelry, Watches
    and Furs.......................................25
Coverage K
Incidental Office, Private School Or Studio............26
Coverage LR
Lock Replacement ......................... 26
Coverage M
Increased Coverage On Money...................26
Coverage P
Business Pursuits...........................26
Coverage S
Increased Coverage On Securities.......................27
Coverage SD
Satellite Dish Antennas.........................27
Coverage SE
Cellular Communication Systems ...................27
Coverage ST
Increased Coverage On Theft Of Silverware..........27

## *Definitions Used In This Policy*

1.  **"You"** or **"your"**—means the person named on the Policy Declarations as the insured and that person's resident spouse.

2.  **"Allstate," "we," "us,"** or **"our"**—means the company named on the Policy Declarations.

3.  **"Insured person(s)"**—means **you** and, if a resident of **your** household:
    a)  any relative; and
    b)  any dependent person in **your** care.

Under **Coverage X—Family Liability Protection** and **Coverage Y—Guest Medical Protection, "insured person"** also means:
c)  any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
d)  with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

4.  **"Bodily injury"**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
    a)  any venereal disease;
    b)  Herpes;
    c)  Acquired Immune Deficiency Syndrome (AIDS);
    d)  AIDS Related Complex (ARC);
    e)  Human Immunodeficiency Virus (HIV);

    or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

    Under **Coverage Y—Guest Medical Protection, bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:
    a)  any venereal disease;
    b)  Herpes;
    c)  Acquired Immune Deficiency Syndrome (AIDS);
    d)  AIDS Related Complex (ARC);
    e)  Human Immunodeficiency Virus (HIV);

    or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5.  **"Building structure"**—means a structure with walls and a roof.

6.  "**Business**"——means:
    a)  any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

    However, the mutual exchange of home day care services is not considered a **business**;
    b)  any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
        1)  it is rented occasionally for residential purposes;
        2)  a portion is rented to not more than two roomers or boarders; or
        3)  a portion is rented as a private garage.

7.  "**Residence premises**"——means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8.  "**Insured premises**"——means:
    a)  the **residence premises**; and
    b)  under **Section II** only:
        1)  the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
        2)  any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
        3)  cemetery plots or burial vaults owned by an **insured person**;
        4)  vacant land, other than farmland, owned by or rented to an **insured person**;
        5)  land owned by or rented to an **insured person** where a one, two, three or four family dwelling is being built as that person's residence;
        6)  any premises used by an **insured person** in connection with the **residence premises**;

        7)  any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9.  "**Occurrence**"——means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. "**Property damage**"——means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. "**Residence employee**"——means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. "**Dwelling**"——means a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

### Insuring Agreement

In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These

persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person.**

### Agreements We Make With You

**We** make the following agreements with **you**:

### Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes

When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

### Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

### Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:

1) **your** legal representative while acting as such, but only with respect to the **residence premises**

and property covered under this policy on the date of **your** death.

2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation

**Your** Right to Cancel:

**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:

**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us, we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us, we** may cancel this policy for one or more of the following reasons:

1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:

**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the

premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

# Section I — Your Property

## Coverage A
## Dwelling Protection

### Property We Cover Under Coverage A:

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling.**

3. Wall-to-wall carpeting fastened to **your dwelling.**

### Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection.**

2. Land, except as specifically provided in **Section I — Additional Protection** under item 12, "Land."

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling.**

## Coverage B
## Other Structures Protection

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures attached to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling.**

4. Wall-to-wall carpeting fastened to other **building structures.**

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A — Dwelling Protection.**

3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling.**

5. Satellite dish antennas and their systems, whether or not attached to **building structures.**

### Losses We Cover Under Coverages A and B:

**We** will cover sudden and accidental direct physical loss to property described in **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection** except as limited or excluded in this policy.

Page 5

## *Losses We Do Not Cover Under Coverages A and B:*

**We** do not cover loss to the property described in **Coverage A — Dwelling Protection** or **Coverage B —Other Structures Protection** consisting of or caused by:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items **1** through **4** listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

12. Collapse, except as specifically provided in **Section I — Additional Protection** under item 11, "Collapse."

13. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

In addition, **we** do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b) mechanical breakdown;
    c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d) rust or other corrosion, mold, wet or dry rot;
    e) contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
    f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    h) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
    i) seizure by government authority.

    If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

20. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

23. **We** do not cover loss to covered property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** when:
   a) there are two or more causes of loss to the covered property; and
   b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 22 above.

## Coverage C
## Personal Property Protection

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C — Personal Property Protection.** This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C — Personal Property Protection.** The total amount of coverage for each group in any one loss is as follows:

1. $ 200 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6. $1,000 — Manuscripts, including documents stored on electronic media.

7. $1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

8. $1,000 — Trailers not used with watercraft.

9. $1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value.

10. $1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $2,000 — Theft of firearms.

12. $2,500 — Theft of silverware, pewterware and goldware.

13. $5,000 — Electronic data processing equipment and the recording or storage media used with that

equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:

a) the retail value of the media, if pre-programmed; or

b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $10,000 — Theft of rugs, including, but not limited to any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

## Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to an **insured person.**

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

## Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

    **We** do not cover:

    a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;

    b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

    **We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

   **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

   **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

   **We** do not cover loss at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the **building**

**structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
   a) maintain heat in the **building structure**; or
   b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

   **We** do not cover:
   a) theft or attempted theft committed by an **insured person**;
   b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
   c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
   d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
   e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

**We** do not cover loss to the property described in **Coverage C — Personal Property Protection** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

    **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

    **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**.

    **We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
    a) may be reasonably expected to result from such acts; or
    b) is the intended result of such acts.

    This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance:

    of property whether on or off the **residence premises** by any person or organization.

15. **We** do not cover loss to covered property described in **Coverage C — Personal Property Protection** when:
    a) there are two or more causes of loss to the covered property; and

**Page 11**

b)   the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover,** items 1 through 14 above.

## *Additional Protection*

1.   **Additional Living Expense**
   a)   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

      Payment for covered additional living expense will be limited to the least of the following:
      1)   the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2)   if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3)   12 months.
   b)   **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
   c)   **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

   These periods of time are not limited by the termination of this policy.

   **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

   No deductible applies to this protection.

2.   **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   **We** will pay for loss:
   a)   that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person;**
   b)   caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c)   to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   **Our** maximum limit of liability for any one loss is $1,000.  All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   **We** do not cover:
   a)   loss arising from any **business** of an **insured person;**
   b)   loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c)   loss arising out of dishonesty of an **insured person.**

   When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

   **We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

   **We** will defend any suit brought against an **insured person** for the enforcement of payment

covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

**We** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3.  **Debris Removal**
    **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4.  **Emergency Removal Of Property**
    **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5.  **Fire Department Charges**
    **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises.** No deductible applies to this protection.

6.  **Temporary Repairs After A Loss**
    **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7.  **Trees, Shrubs, Plants and Lawns**
    **We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A — Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises. We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises,** vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure.**

    **We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A — Dwelling Protection.**

    **We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8.  **Temperature Change**
    **We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure.**

    This coverage does not increase the limit of liability applying to the damaged property.

9.  **Power Interruption**
    **We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises.** If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

    This coverage does not increase the limit of liability applying to the damaged property.

**Page 13**

10. **Arson Reward**

**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**

**We** will cover:

a) the entire collapse of a covered **building structure**;

b) the entire collapse of part of a covered **building structure**; and

c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a **building structure** specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:

a) a loss **we** cover under **Section I, Coverage C—Personal Property Protection**;

b) hidden decay of the **building structure**;

c) hidden damage to the **building structure** caused by insects or vermin;

d) weight of persons, animals, equipment or contents;

e) weight of rain or snow which collects on a roof;

f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

12. **Land**

If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I—Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

## Section I Conditions

1. **Deductible**

**We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**

In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f)  as often as **we** reasonably require:
1)   show **us** the damaged property.
2)   at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
3)   produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and

g)  within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
1)   the date, time, location and cause of loss;
2)   the interest **insured persons** and others have in the property, including any encumbrances;
3)   the actual cash value and amount of loss for each item damaged, destroyed or stolen;
4)   any other insurance that may cover the loss;
5)   any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
6)   at **our** request, the specifications of any damaged **building structure** or other structure;
7)   evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money Condition. State the cause and amount of loss.

4. **Our Settlement Options**
In the event of a covered loss, **we** have the option to:
a)   repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b)   pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
Under **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
a)   Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
1)   the whole amount of loss for property covered under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection,** without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;
2)   the whole amount of loss for property covered under **Coverage C — Personal Property Protection** without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b)   Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph "c", and paragraph "d" below if applicable, if **you** repair or replace the damaged, destroyed or

stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure**(s) for equivalent construction for similar use on the same premises;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure**(s) with equivalent construction for similar use on the same **residence premises**; or

3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection,** regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement

described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Coverage C — Personal Property Protection**;

2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure**;

3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or

4) land.

Payment under "a", "b," or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or

3) the limit of liability shown on the Policy Declarations for **Coverage C —**

**Personal Property Protection,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1)  property insured under **Coverage A— Dwelling Protection** and **Coverage B —Other Structures Protection,** except wall-to-wall carpeting;
2)  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced.
3)  articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or
4)  property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

6.  **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us,** an appraisal award or a court judgment.

7.  **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where

the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8.  **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person.**

9.  **Permission Granted To You**
a)  The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
b)  **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10.  **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11.  **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
   a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
   b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B —Other Structures Protection** and **Coverage C —Personal Property Protection** in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

18. **Mortgagee**
A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
   a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve

**Page 18**

property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b)  give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:

a)  furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;

b)  pay upon demand any premium due if an **insured person** fails to do so;

c)  notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d)  give **us** the mortgagee's right of recovery against any party liable for loss; and

e)  after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgage interest provision shall apply to any trustee or loss payee or other secured party.

# Section II — Family Liability and Guest Medical Protection

## Coverage X
## Family Liability Protection

### Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:

1.  **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

    a)  such **insured person** lacks the mental capacity to govern his or her conduct;

    b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

    c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2.  **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3.  **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5.  **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

    a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;

    b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

Page 19

c) a motorized wheel chair;
d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
e) a golf cart owned by an **insured person** when used for golfing purposes;
f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g) lawn and garden implements under 40 horsepower;
h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
a) the negligent supervision by an **insured person** of any person; or
b) any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal,

release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

**We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

**We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

**Page 20**

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## *Coverage Y*
## *Guest Medical Protection*

### *Losses We Cover Under Coverage Y:*
**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### *Losses We Do Not Cover Under Coverage Y:*
1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or

   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.
   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises.** However, this exclusion does not apply to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present business activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## *Additional Protection*

**We** will pay, in addition to the limits of liability:
1. **Claim Expense**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage, you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.

   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an insured person will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons,** injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Family Liability Protection** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting

from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence.**

**Our** total liability under **Coverage Y@–Guest Medical Protection** for all medical expenses payable for **bodily injury,** to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person.**

6. **Our Rights to Recover Payment—Coverage X —Family Liability Protection**
   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Coverage X—Family Liability Protection** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person,** injured person, and **us.**
   c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person.**

8. **Other Insurance—Coverage X—Family Liability Protection**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## *Section III—Optional Protection*

### *Optional Coverages You May Buy*

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**
   **We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A—Dwelling Protection** to comply with local building codes after covered loss to **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling.**

2. **Coverage BP**
   **Increased Coverage On Business Property**
   The $1,000 limitation on **business** property located on the **residence premises,** under **Coverage C—Personal Property Protection,** is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises.**

3. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The $5,000 limitation on electronic data processing equipment under **Coverage C— Personal Property Protection,** and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

4. **Coverage F**
   **Fire Department Charges**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

5.  **Coverage G**
    **Loss Assessments**
    If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

    **We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
    a)  sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
    b)  **bodily injury** or **property damage** covered under **Section II** of this policy.

    Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

    **Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

    In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

    This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

6.  **Coverage J**
    **Extended Coverage On Jewelry, Watches and Furs**
    Coverage C ——**Personal Property** Protection is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
    a)  jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
    b)  furs, including any item containing fur which represents its principal value.

    The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C ——Personal Property Protection.** However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

    **We** do not cover loss caused by or consisting of:
    a)  intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
        1)  may be reasonably expected to result from such acts; or
        2)  is the intended result of such acts.
    b)  wear and tear, gradual deterioration, inherent vice, insects or vermin;
    c)  nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

        **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
    d)  war or warlike acts, including, but not limited to insurrection, rebellion or revolution.
    e)  failure by any insured person to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

    Any deductible shown on the Policy Declarations applicable to **Coverage C ——**Personal **Property**

**Page 25**

**Protection,** also applies to a loss under this coverage.

7. **Coverage K**
   **Incidental Office, Private School Or Studio**
   a) The $200 and $1,000 limits applying to property used or intended for use in a **business** under **Coverage C—Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises.** This does not include electronic data processing equipment or the recording or storage media used with that equipment.

   The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises.** The second limit applies to property while away from the **residence premises.** These limits are not in addition to **Coverage C—Personal Property Protection, Limitations On Certain Personal Property** on property used or intended for use in a **business.** The increased coverage does not include property held for sample, sale or delivery after sale.

   b) **Coverage X—Family Liability Protection** and **Coverage Y—Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person.** The occupancy of the described property shall not be considered a **business.**

   **We** do not cover **bodily injury** to:
   a) any employee other than a **residence employee;** or
   b) any person arising out of corporal punishment administered by or at the direction of an **insured person.**

8. **Coverage LR**
   **Lock Replacement**
   **Coverage A—Dwelling Protection** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when

a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

9. **Coverage M**
   **Increased Coverage On Money**
   The $200 limitation on money, bullion, bank notes, coins and other numismatic property under **Coverage C—Personal Property Protection** is increased to the amount shown on the Policy Declarations.

10. **Coverage P**
    **Business Pursuits**
    **Coverage X—Family Liability Protection** and **Coverage Y—Guest Medical Protection** are extended to cover specified **business** pursuits of an insured person.

    **We** do not cover:
    a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person.** This also means a partnership or joint venture of which an **insured person** is a partner or member;
    b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
    c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
    d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
    e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

11. **Coverage S**
    **Increased Coverage On Securities**
    The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection,** is increased to the amount shown on the Policy Declarations.

12. **Coverage SD**
    **Satellite Dish Antennas**
    Coverage C — Personal Property Protection is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on your residence premises, subject to the provisions of Coverage C — Personal Property Protection.

    The amount of coverage is shown on the Policy Declarations.

13. **Coverage SE**
    **Portable Cellular Communication Systems**
    Coverage C — **Personal Property Protection** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a **business.**

    The amount of coverage is shown on the Policy Declarations.

14. **Coverage ST**
    **Increased Coverage On Theft Of Silverware**
    The $2,500 limitation on theft of silverware, pewterware and goldware under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate**.

Secretary

President
Allstate Personal Property & Casualty Company