UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TISHA HILARIO,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 20-cv-05459-WHO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Dkt. No. 19 |

## INTRODUCTION

Plaintiff Tisha Hilario brings this action on behalf of herself and a putative class of California home insurance policyholders against defendant Allstate Insurance Company ("Allstate"), challenging Allstate's alleged method for calculating a home's square footage. She alleges that Allstate improperly double counts the square footage of policyholders' garages when determining the total square footage of a property and charges policyholders inflated premiums based on these incorrect figures. She brings claims for (i) breach of contract; (ii) breach of the implied warranty of good faith and fair dealing; and (iii) violation of Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

Allstate moves to dismiss all three of her claims for failure to state a claim under Rule 12(b)(6). As discussed in detail below, Hilario's contract-based claims fail because she alleges misconduct that predates any alleged contractual obligation. Her UCL claim, which sounds in fraud, fails to meet the heightened particularity requirements of Rule 9(b). For these reasons, Allstate's motion to dismiss GRANTED. Hilario will have 30 days leave to amend.

# BACKGROUND

## I. HILARIO'S INSURANCE POLICY

Plaintiff Tisha Hilario is a San Francisco resident and homeowner. Dkt. No. 1, ("Compl.") ¶ 3. Her home has been covered by an Allstate homeowners insurance policy since at least February 2020, under policy number 914140656. *Id.*; Compl., Ex. A. Hilario alleges that Allstate overcharged her by using an incorrect, inflated square footage of her home to calculate her home insurance premiums. Compl. ¶ 21. Specifically, Hilario alleges that the correct square footage of her home is 1154 square feet, comprising 862 square feet of total finished living space and 288 square feet from an attached single-car garage. *Id.* ¶¶ 20-21. However, Hilario's insurance policy lists the square footage of her home as 1438 square feet. *Id.* ¶ 19. She asserts that Allstate double counted the 288 square feet of garage space when calculating the total square footage of her home to reach this allegedly incorrect 1438 square feet figure. *Id.* ¶¶ 19-21.

On information and belief, Hilario alleges that since at least January 2019, Allstate has been systematically overcharging California policyholders by knowingly double counting garage space when calculating the total square footage used to determine their home insurance premiums and CEA earthquake policy premiums. *Id.* ¶¶ 1, 16-17.

## II. POLICY DISCLOSURES

Hilario's homeowners insurance policy contains several statements relevant to this litigation. On the first page of the insurance policy a bolded paragraph in the right-hand margin states:

> **Some of all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

Compl., Ex. A, Policy Declarations at 1. In addition, the policy section titled "Coverage Changes" states, in part:

> The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or

2

> incomplete, **we** may adjust **your** coverage premium accordingly during the policy period.

Compl., Ex. A, Policy at 4. Near the end of the policy, a section titled "Suit Against Us" states:

> No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.

*Id.* at 24.

### III.     HILARIO'S CLAIMS

Hilario brings this action individually and on behalf of a putative class of California Allstate home insurance policyholders who have at least one garage. Compl. ¶ 1. She brings claims for (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; and (iii) unlawful or unfair business practices under Cal. Bus. & Prof. § 17200, et seq.

All of Hilario's claims are brought on behalf of a putative class which Hilario seeks to define as:

> All Allstate California policyholders from August 5, 2016 to the present with at least one built-in garage who paid premiums for homeowners or renters insurance to Allstate.

*Id.* at ¶ 23. She also seeks to represent one sub-class defined as:

> All class members who had earthquake coverage in California.

*Id.*

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."

3

*Twombly*, 550 U.S. at 555, 570. However, under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

### Breach of Contract

Under California law the elements for a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *See CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Here, Allstate argues that Hilario's breach of contract claim fails because Hilario failed to perform her obligations under the policy to notify Allstate of any errors in her policy declaration. Dkt. No. 19 ("Mot.") at 4-5. While the parties' briefing focuses entirely on this issue, I conclude that Hilario's contract claim fails for the simpler reason that it does not adequately allege a breach of the contract.

Hilario asserts that Allstate breached the terms of her homeowners insurance contract because the contract provides that "the premium for the policy is based on information you have given us" but Allstate allegedly used an incorrect formula to calculate her home's total square

4

footage. Complaint ¶ 40. This language does not appear to create a contractual obligation on Allstate's part – rather it appears to be a representation regarding how Allstate determined the premiums that are listed in the contract. To the extent the representation is false, it could theoretically support rescission or dissolution of the contract, but, as it is describing something that happened in the past, it does not make sense as an affirmative obligation or duty.

Even if I assume that this language somehow contractually obligated Allstate—prior to formation of the contract—to determine Hilario's premiums using the information she provided, Hilario's allegations suggest that Allstate did so. *See id.* ¶¶ 20-21. Hilario alleges that Allstate determined her home's square footage using information she presumably supplied, specifically the total living space of her home and the fact that she has an attached one-car garage. *Id.* She asserts that Allstate used a flawed formula to calculate her home's square footage and specifically that Allstate improperly double counted her garage, *id.* ¶ 21, but she does not allege that Allstate wholly ignored the information she provided or determined her premiums at random. To the extent the policy required Allstate to use the information provided by Hilario to determine the policy premiums, Hilario's allegations indicate that it did so.

Hilario seems to suggest that Allstate was contractually obligated to calculate her home's square footage and premiums *correctly* at the outset, but she has not identified any language in the contract holding Allstate to such a standard. Instead, the policy language acknowledges the possibility that the information listed in the policy declarations may be incorrect or incomplete and provides that it can be corrected and adjusted by the insured. *See e.g. id.* at 25 ("Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods"); *id.* at 33 ("You agree to cooperate with us in determining if this information is correct and complete"). This language indicates that the contracting parties know and accept that there might be mistakes in the policy declaration.

Hilario's allegations do not establish that Allstate breached an obligation under the contract by allegedly double counting her garage space. Because Hilario has failed to identify a way in which Allstate breached the homeowners insurance policy, her breach of contract claim

5

fails.

Allstate also argues that Hilario is barred from bringing a breach of contract claim because she failed to notify Allstate of the alleged error with the square footage on her policy declaration, a condition precedent to filing suit. Dkt. No. 19 ("Mot.") at 4-5. It notes that the policy's "Suit Against Us" section states that "No suit or action may be brought against **us** unless there has been full compliance with all policy terms." *Id.* at 5 (citing Compl., Ex. A, Policy at 24). It argues that the policy imposed a duty on Hilario to notify Allstate of any errors in the policy declaration by stating "Please notify us immediately if you believe that any information on your Policy Declaration is incorrect," Compl., Ex. A, Policy Declarations at 1, and "You agree to cooperate with **us** in determining if [the information in the policy declaration] is correct and complete," Compl., Ex. A, Policy at 4. Allstate asserts that Hilario failed to satisfy this duty prior to filing suit because she did not notify it of the alleged error with the square footage listed in her policy declaration. Mot. at 4-5.

I agree that Hilario was obligated to notify Allstate of the alleged error in her policy declaration prior to bringing a contract claim against Allstate. Courts routinely uphold insurance policy terms requiring insureds to comply with all policy terms prior to bringing a lawsuit. *See Pavlina v. Safeco Ins. Co. of Am.*, No. 12-cv-534-LHK, 2012 WL 5412796, at *6 (N.D. Cal. Nov. 6, 2012) (concluding that language stating "No legal action may be brought against us until there has been full compliance with all the terms of the policy . . ." made all policy provisions conditions precedent to filing suit). Here, Hilario's policy states "You agree to cooperate with us in determining if [the] information [in your policy declaration] is correct and complete," Compl. Ex. A, Policy at 4, and also instructs "Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us . . ." Compl., Ex. A, Policy Declarations at 1. This language obligated Hilario to cooperate with Allstate in ensuring her policy declarations were accurate by, at minimum, notifying Allstate of any errors she identified. Because Hilario does not dispute that she failed to cooperate with Allstate in this way prior to filing suit, she has not met all conditions precedent and her contract claim must be dismissed.

Hilario makes several arguments that her claim is not barred for failure to notify Allstate, none of which is convincing. First, Hilario argues that the contract does not contain language establishing a condition precedent requiring her to notify Allstate that "she learned of Allstate's double-counting and overcharging." Dkt. No. 29 ("Opp.") at 5. This argument mischaracterizes Allstate's position – Allstate argues that Hilario was obligated to notify Allstate as to the alleged error in the square footage of her home as listed on the policy declaration, not that Allstate allegedly double-counted her garage. As discussed above, this duty is supported by language in Hilario's policy.

Second, Hilario argues that there was no obligation to notify Allstate of errors in her policy declaration prior to filing suit because the declaration page only states "[p]lease notify us," not that she *must* provide notice. Opp. at 5. While the language Hilario cites arguably does not create an obligation, the policy separately states "You agree to cooperate with us in determining if [the] information [in your policy declaration] is correct and complete," which unambiguously requires cooperation on the part of the insured. Compl., Ex. A, Policy at 4. Given the specific instruction on the front of the policy declaration to "Please notify us" of any errors, cooperation, in this context, seems to specifically require, at minimum, that an insured notify Allstate of any errors she identifies.

Third, Hilario argues that even if she was required to notify Allstate of the errors in her policy prior to filing suit, Allstate must show that Hilario's failure to meet this condition "substantially prejudiced Allstate" in order to excuse Allstate's performance. Opp. at 6. This argument again misses the mark because Allstate is not asserting that its performance should be excused, only that Hilario is barred from filing suit because she has not complied with all conditions precedent under the contract to bringing a legal action. None of the cases Hilario cites indicate that prejudice is relevant where an insurer is not seeking relief from its own obligations under the contract. *See e.g. Belz v. Clarendon Am. Ins. Co.*, 158 Cal. App. 4th 615, 625 (2007) ("Under California law, an insured's breach of a notice provision or a cooperation clause *does not excuse the insurer's performance unless the insurer can show that it suffered prejudice*") (emphasis added).

7

1         Fourth, Hilario asserts that Allstate cannot claim she failed to cooperate because she did not "fail[] to produce any requested records or material or fail[] to respond to any inquiries from Allstate" like the plaintiff in *Martinez v. Infinity Ins. Co.*, 714 F. Supp. 2d 1057, 1062 (C.D. Cal. 2010). Opp. at 7. This argument is not convincing. In *Martinez*, the issue was whether the plaintiff had cooperated in the context of seeking coverage for a claim and whether the plaintiff's failure to cooperate justified the insurer denying her claim. 714 F. Supp. 2d at 1061. Here, the relevant cooperation clause relates to ensuring the accuracy of the policy declarations and the policy specifically instructs insureds to contact Allstate if they identify any errors in their policy. What constitutes "cooperation" in this context is different and the specific facts of *Martinez* are therefore not analogous.

        Fifth, Hilario argues failure to cooperate is not a proper basis for dismissal because the cases Allstate cites regarding cooperation clauses were decided at the summary judgment stage. Opp. at 7. But nothing in the cases Allstate cites indicates that failure to comply with a cooperation clause cannot be adjudicated at the motion to dismiss stage if no factual issue is in dispute. As discussed above, Hilario's policy requires insureds to comply with all policy terms prior to filing suit. As a result, it is appropriate to assess Hilario's compliance with the cooperation clause at the motion to dismiss stage.

        Finally, Hilario argues that, even if she failed to comply with the cooperation clause, she can still bring her contract claim because she "substantially performed" her obligations under the contract by paying her insurance premiums. Opp. at 8. "[W]hat constitutes substantial performance is a question of fact." *Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.*, 41 Cal. App. 5th 357, 364 (2019). "California has applied the doctrine of substantial performance to conditions precedent." *FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 Fed. App'x. 448 (citing *Cline v. Yamaga*, 97 Cal. App. 3d 329, 248 (1979); *cf. 1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1018 (2006) (noting that when applying the substantial performance standard, "the total failure to comply" with a particular insurance policy term does not satisfy the standard). Here, Hilario asserts that she substantially complied with her obligations under the policy because she paid her insurance premiums. Opp. at 8. But the

8

relevant inquiry is whether she substantially performed her specific obligation to cooperate with Allstate to ensure her policy declaration information was accurate. *See e.g. Hernandez and Nunez, Inc. v. Penn-America Ins. Co.*, 2019 WL 1423770 (C.D. Cal. Feb. 15, 2019) (separately analyzing whether a plaintiff substantially complied with different specific duties and terms of his policy). Because there is no dispute that Hilario did not attempt to notify Allstate regarding the alleged error in her policy declaration, or otherwise cooperate to correct the error, she did not substantially perform her obligations under the cooperation provision in her policy.

For these reasons, Hilario's contract claim is dismissed.

**Implied Covenant of Good Faith and Fair Dealing**

Hilario asserts that Allstate breached the implied covenant of good faith and fair dealing by charging her premiums based on an incorrect calculation of her home's square footage. Compl. ¶ 48. Allstate argues that this claim fails because there is no underlying breach of the contract and because implied covenant claims, in the insurance context, only relate to improper withholding of benefits. Mot. at 6. It also argues that Hilario's claim fails under the "voluntary payments doctrine." *Id.* at 7. Although Allstate's arguments miss the mark, this claim must be dismissed because the alleged bad faith Hilario has identified relates to conduct that predates the parties' contract. As a result, Hilario has failed to allege that Allstate's conduct interfered with or impacted her right to receive a benefit of her contract.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This principle is applicable to policies of insurance." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1158 (9th Cir. 2002) (citation and internal quotation marks omitted). "In the context of an insurance policy, [t]he terms and conditions of the policy define the duties and performance to which the insured is entitled." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000) (citation and internal quotation marks omitted). As a result, any potential implied covenant claim must be based on the obligations and duties of the parties' contract. It is not an avenue for challenging a contract's terms or enforcing terms and obligations contrary to the contract language.

9

Hilario argues that Allstate engaged in bad faith when calculating the square footage of her home prior to listing it in her policy. But this allegedly bad faith conduct is not redressable with an implied covenant claim because it predates the contract and relates to errors in the contract's formation. There is no dispute that Hilario's policy identifies the square footage of her home as 1438 square feet and that Allstate used this figure to calculate her premiums. Compl., Ex. A, Policy Declarations at 1. Hilario does not allege that Allstate engaged in bad faith to deprive her of any benefit of the contract she actually entered into – as opposed to the benefits she would have been entitled to under a different contract without the alleged error. This case is distinguishable from *Parducci v. Overland Solutions, Inc.*, in which I allowed an implied covenant claim to proceed where the plaintiff alleged that its insurer "was not calculating premiums in good faith." *See Parducci v. Overland Solutions, Inc.*, No. 18-cv-07162-WHO, 2019 WL 6311384, at *9 (N.D. Cal. Nov. 25, 2019). There, in contrast, the plaintiffs alleged that the insurer acted in bad faith by refusing to reduce the policy premiums when presented with evidence that the property was over-insured. *Id.* at *8-9. Here, Hilario does not allege that Allstate refused to adjust her premiums, but that Allstate calculated the premiums incorrectly in the original contract. Because Hilario has failed to identify any way in which Allstate interfered with her right to receive the benefits of her policy, she has failed to make out an implied covenant of good faith and fair dealing claim.

Allstate argues that Hilario's implied covenant of good faith and fair dealing claim fails for three reasons. Although, as discussed below, none of these arguments are ultimately convincing, I conclude that Hilario's claim must nevertheless be dismissed for the reason discussed above.

First, Allstate argues that Hilario's claim fails because an implied covenant claim requires showing a breach of contract. Mot. at 6. This is incorrect. As I recently noted in a similar insurance case, "breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing." *Parducci*, 2019 WL 6311384, at *8. Failure to identify a specific breach of contract is not a bar to Hilario's claim.

Second, Allstate argues that, in the insurance context, an implied covenant claim requires showing that benefits due under the policy were unreasonably withheld. Mot. at 6-7. Because Hilario's claim does not relate to withholding of benefits, Allstate argues the claim must fail. *Id.*

10

1   But, improper withholding of benefits "is one type of bad faith claim, but not the only type, and it
2   is not the bad faith claim asserted" in this case. *Parducci*, 2019 WL 6311384, at *9 (*citing King v.
3   Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 941 (N.D. Cal. 2015). Hilario's implied covenant claim
4   does not fail because it is not related to withholding of benefits.

5   Third, Allstate argues that Hilario's claim is barred because she voluntarily paid her
6   premiums despite knowing that the square footage listed on her policy was incorrect. Mot. at 7.
7   "The voluntary payment doctrine bars the recovery of money that was voluntarily paid with full
8   knowledge of the facts." *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908-09 (N.D. Cal. 2011).
9   "Whether a plaintiff knew her payment to be excessive at the time of payment is to be judged in
10  light of the facts that were known to plaintiff and not whether plaintiff has the means of
11  knowledge by which they could have discovered the payment to be excessive." *Rodman v.
12  Safeway Inc.*, 125 F. Supp. 3d 922, 941 (N.D. Cal. 2015) (internal quotation marks omitted). The
13  voluntary payment doctrine is an affirmative defense that can only properly be considered on a
14  motion to dismiss "if the defense is based on undisputed facts or if the basis for the argument
15  appears on the face of the complaint and any materials the court takes judicial notice of."
16  *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012). Here, Allstate asserts
17  that Hilario knew the square footage listed on her policy was incorrect because she knew the
18  correct square footage of her home, knew what was listed on her policy, and made payments
19  anyway. Mot. at 7. However, it is not clear from Hilario's Complaint when she discovered that
20  the square footage on her policy was inaccurate and whether she made any voluntary payments
21  "with full knowledge" that her premiums were excessive. As a result, this issue is not appropriate
22  for resolution at this stage and is not a basis for dismissing Hilario's implied covenant claim.

23  Allstate's arguments are not convincing. Nevertheless, Hilario's claim must be dismissed
24  because it relates exclusively to alleged bad faith that predates the formation of the contract and
25  does not involve interference with Hilario's right to receive any benefit under her contract.

26  **UCL**
27  Allstate argues that Hilario's UCL claim should be dismissed because it does not meet the
28  pleading particularity requirements of Rule 9(b). It further asserts that the UCL claim fails

11

because (1) she has not adequately alleged the elements of a UCL claim; (2) she has not met the UCL's economic injury requirement; (3) her claim is based on the same facts as her contract claim, and therefore fails as a matter of law; and (4) she is not entitled to injunctive relief. I agree that Hilario's claim is subject to but fails to meet the heightened Rule 9(b) standard, and therefore must be dismissed.

Hilario alleges that "[s]ince at least January 2019, Allstate has been overcharging California policyholders by inflating the square footage of their homes in premium calculations. Allstate is well-aware that it has been doing so, but has failed to rectify its practices and, instead, has elected to continue taking unjust and unwarranted overcharges from its unwitting policyholders." Compl. ¶ 1. She repeats these allegations of fraudulent conduct throughout her Complaint, alleging: (1) that Allstate represented that her premiums would be "based on information you have given us" but were actually "based on a Defendant's false and wrongful calculations," *id.* ¶¶ 39-41; (2) that Allstate "charg[ed] Plaintiff and the members of the Class premiums based upon falsely inflated and/or miscalculated square footage," *id.* ¶ 57; and (3) that Allstate knowingly "failed to rectify the wrongful conduct" in "conscious disregard of the rights of the Plaintiff and the members of the Class." *Id.* ¶ 52.

Rule 9(b)'s heightened pleading standard applies to Hilario's UCL claim because it is grounded in fraud. Under Ninth Circuit law, Rule 9(b) applies to UCL claims, including "unfair" and "unlawful" prong claims that allege a "fraudulent course of conduct." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-1127 (9th Cir. 2009). The elements of fraud in California are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp. Inc.*, 15 Cal. 4th 951, 974 (1997). Here, Hilario's UCL claim relies on an alleged "fraudulent course of conduct" and therefore sounds in fraud for purposes of Rule 9(b).

Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

While allegations "on information and belief" may suffice, the plaintiff still "must state the factual basis for the belief." *Neubronner v. Milken*, 6 F. 3d 666, 672 (9th Cir. 1993). Hilario's allegations do not meet this standard. She adequately alleges that the correct living space of her home is 1154 square feet and that her policy incorrectly lists her home's square footage as 1438 square feet. *See* Compl. ¶¶ 19-20. But her remaining allegations are largely vague, speculative, and sometimes inconsistent. She asserts that Allstate double counted the square footage of her garage, but has not alleged sufficient facts to justify this assumption. Based on her allegations it is equally plausible that there was an error or mistake in the information Hilario provided to Allstate. More factual allegations are needed to support a reasonable inference that Allstate double counter her garage, such as what information Allstate requested from Hilario, what information Hilario provided, and any relevant facts, beyond conclusory statements, about how Allstate calculates the square footage of a property.

In addition, Hilario's Complaint contains unsupported and inconsistent claims about the relevant time period of the conduct alleged. In the first numbered paragraph of the Complaint, Hilario alleges that "[s]ince at least January 2019, Allstate has been overcharging California policyholders by inflating the square footage of their homes." Compl. ¶ 1. But, she seeks to define a putative class of California policyholders "from August 5, 2016 to the present," *id.* ¶ 23, and asserts in her opposition brief that the "when" of this case is "2016 to Present" Opp. at 13. Not only are these allegations inconsistent, they are not supported by any facts. Hilario's own policy, which she attaches to the Complaint, covers a period from February 2020 to February 2021. Complaint at 25. No other facts are alleged supporting the claim that any error predates this period.

The Complaint also contains vague and unsupported statements regarding if and when Allstate knew of the alleged double counting issue. Hilario alleges that "Allstate is well-aware that it has been [double counting garage space], but has failed to rectify its practices and, instead, has elected to continue taking unjust and unwarranted overcharges from its unwitting policyholders." Compl. ¶ 1. Later, she alleges that "[e]ven when [the double counting issue] was brought to Defendant's attention, Defendant failed to rectify the wrongful conduct." *Id.* ¶ 52.

13

These allegations leave out key details such as how and when Allstate learned of the alleged issue. Hilario alleges that the problem "was brought to Defendant's attention" but does not allege who raised the issue, what was communicated, who at Allstate was notified, and when.

Finally, Hilario's allegations regarding injury to the putative class are speculative and not supported by any clear factual basis. She notes at the beginning of her Complaint that all allegations, except for those regarding her personal experience, are made on "information and belief." *See* Complaint at 1-2 ("Plaintiff alleges as follows based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief . . ."). While allegations made on "information and belief" can satisfy Rule 9(b), a plaintiff must still "state the factual basis for the belief." *Neubronner*, 6 F. 3d at 672. Hilario has not done so here. The Complaint does not identify any facts, as opposed to conclusory assertions, indicating that the alleged problem with double counting is a state-wide issue, as opposed to a problem with Hilario's particular policy. Something more, such as factual allegations of similar errors in other individuals' policies, relevant statements or representations from Allstate, or applicable Allstate policies and practices, is needed to demonstrate that the alleged error with Hilario's policy is a widespread issue.

At oral argument, Hilario's counsel represented that there are a number of facts that support the UCL claim including: (1) the alleged double counting issue is the result of a computer error or glitch that causes Allstate's system to double count garage space; (2) Allstate has an internal error code dedicated to this glitch; (3) the glitch or error is the result of a change or update that Allstate made in January 2019; and (4) a former Allstate employee notified Allstate of the issue, but Allstate has not addressed the problem. While these representations from counsel suggest that there may be adequate factual support for Hilario's UCL claim, none of these allegations is included in the current Complaint. Because Hilario's UCL claim, as drafted, fails to meet Rule 9(b)'s particularity requirement, it must be dismissed.

Allstate raises a number of other bases for dismissing Hilario's UCL claim that I will briefly address. First, Allstate argues that Hilario has failed to make out a claim under the UCL's "unlawful" prong because she has not identified a viable predicate violation. I agree. The UCL's

14

unlawful prong creates a cause of action to challenge business practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-839 (1994). "[A] common law violation such as a breach of contract is insufficient" to serve as a predicate violation of an "unlawful" prong claim. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Here, Hilario has not identified any viable predicate violation to make out a claim under the UCL's unlawful prong. Although she argues that Allstate's conduct violates various insurance regulations in her opposition, *see* Opp. at 14, none of these regulations is alleged or addressed in her Complaint. She has therefore failed to adequately allege an "unlawful" claim.

Second, Allstate argues that Hilario has failed to adequately allege an "unfair" prong claim because she has not alleged any conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or alternatively, has not alleged that Allstate's conduct violates a public policy tethered to any specific constitutional, regulatory, or statutory provision. Mot. at 10. I do not agree that Hilario's claim is inadequate for this reason. Hilario's allegations, though too conclusory, assert that Allstate is knowingly double counting the garage space of California policyholders to unjustifiably inflate the premiums charged to consumers who fail to notice the errors on their policies. This asserted practice is misleading and fraudulent and therefore, if adequately supported by facts, would meet either of the applicable "unfair" standards both as conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and conduct that violates a particular public policy – prohibitions against fraud.

Third, Allstate argues that Hilario lacks standing under the UCL because she has not alleged a causal connection between the allegedly unfair business practice and her economic injury. Mot. at 12. Hilario's allegations are not deficient for this reason. She has alleged that Allstate unjustifiably inflated the square footage of her home in order to charge her higher premiums. The alleged practice – improperly double counting garage space – is the direct cause of her alleged economic injury – overpaying insurance premiums. There is a clear causal connection between Allstate's alleged improper practice and Hilario's economic injury.

Fourth, Allstate argues that Hilario's UCL claim must fail because it relies on the same

alleged facts as her breach of contract claim. Mot. at 13. I disagree. Allstate cites cases noting that a breach of contract alone does not give rise to a UCL claim. *See e.g.*, *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1033-34 (N.D. Cal. 2009) (dismissing UCL claim where plaintiff "failed to allege any conduct that is 'unlawful, unfair, or fraudulent' independent of the alleged breach of contract"). These cases do not support Allstate's assertion that a UCL claim fails "as a matter of law" if it relies on the same facts as a contract claim. The relevant inquiry is whether the alleged facts describe conduct that is "unlawful, unfair, or fraudulent." That Hilario alleges the same basic facts to support her contract and UCL claims is not a valid basis for dismissing her UCL claim.

Finally, Allstate argues that Hilario lacks standing to seek injunctive relief because she has failed to plausibly allege that there is "a sufficient likelihood that [s]he will again be wronged in a similar way." Mot. at 13 (*quoting Bates v. UPS*, 511 F. 3d 974, 985 (9th Cir. 2007). Because Hilario's claim fails for other reasons, I need not address this issue now. Hilario should make sure to include any allegations relevant to whether she is likely to "again be wronged in a similar way" in any amended complaint.

## CONCLUSION

For the reasons discussed above, Allstate's motion to dismiss is GRANTED. Hilario will have 30 days leave to amend her claims.

**IT IS SO ORDERED.**

Dated: December 23, 2020

William H. Orrick
United States District Judge