**SHANE LAW**
David Shane (State Bar No. 109890)
1000 Drakes Landing Rd #200
Greenbrae, CA 94904-3027
Telephone: (414) 464-2020
dshane@shanelaw1.com

**HART McLAUGHLIN & ELDRIDGE LLC**
Brian Eldridge (State Bar No. 220822)
Steven Hart (pro hac vice)
One South Dearborn, Suite 1400
Chicago, Illinois 60603
Telephone: (312) 955-0545
beldridge@hmelegal.com
shart@hmelegal.com

*Attorneys for Plaintiff Tisha Hilario,*
*individually and on behalf of a class of all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TISHA HILARIO, individually and on behalf of a class of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br><br>Defendant. | No.  3:20-cv-05459-WHO<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND FOR CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**<br><br>Hearing Date & Time: 8/20/2025, 2:00 p.m.<br><br>Judge: William H. Orrick |

Plaintiff, individually and on behalf of a class of all others similarly situated, by and through their counsel, respectfully request that this Court preliminarily approve this settlement and certify the proposed settlement class without objection or opposition from Defendant Allstate Insurance Company. Plaintiff and Defendants shall be collectively referred to as "Parties."

# TABLE OF CONTENTS

I.  **INTRODUCTION** ........................................................................................................... 1

II. **BACKGROUND** ........................................................................................................... 1

  A.  **Case Overview** .................................................................................................. 1

  B.  **Plaintiff's Theory** ............................................................................................ 2

  C.  **This Court's Certification of a Class, which was Affirmed by the Ninth Circuit** .............................................................................................................. 4

  D.  **Mediation and Resolution** ............................................................................. 5

  E.  **Summary of Settlement Agreement** ............................................................ 5

    *1.  Proposed Awards to Class Members* ....................................................... 6

    *2.  Service (or Incentive) Award to the Class Representative* ..................... 8

    *3.  Fees and Expenses to Class Counsel* ..................................................... 10

    *4.  Class Administration Procedure* ........................................................... 12

III. **ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL** ..................................... 13

  A.  **The proposed settlement is the result of arm's length negotiations and is presumed to be fair and reasonable** .............................................................. 15

  B.  **The proposed settlement falls "within the range of possible approval" and therefore should be preliminarily approved** ..................................................... 15

IV. **THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS** ............ 18

  A.  **The Parties request a slight modification to the Class Definition** ................. 18

  B.  **The requirements of Rule 23(a) are satisfied** ................................................. 19

    *1.  Numerosity* ............................................................................................ 19

    *2.  Commonality* .......................................................................................... 19

    *3.  Typicality* ............................................................................................... 21

    *4.  Adequacy* ............................................................................................... 21

  C.  **The requirements of Rule 23(b)(3) are satisfied** ........................................... 22

V.  **NOTICE TO THE CLASS** ............................................................................................ 22

VI. **CONCLUSION** ........................................................................................................... 23

MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 18

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) .................................. 14

*Benitez v. W. Milling, LLC*, 2020 WL 309200 (E.D. Cal. Jan. 21, 2020) ............................................... 22

*Boyd v. Bank of America Corp.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ..................................... 10

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir.1992), cert. denied., 506 U.S. 953 [113 S.Ct. 408, 121 L.Ed.2d 333] (1992) ...................................................................... 16

*Class Plaintiffs v. Seattle*, 955 F.2d 1267 (9th Cir. 1992) ......................................................... 14

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................... 15

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, (1983) .................................................. 11

*Heredia v. Sunrise Senior Living, LLC*, 2021 WL 6104188 (C.D. Cal. Nov. 16, 2021) .................. 21, 22

*In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012) ......................... 19

*In re Heritage Bond Litig.*, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................... 10

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................... 14

*In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) .................. 14, 15

In re Nat'l Football League Players' Concussion Injury Litig., 961 F.Supp.2d 708 (E.D. Pa.2014) ............................................................................................................ 15

*In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. Jan. 8, 2008) ......................... 10

In re Pacific Enters. Sec. Litig., 47 F.3d 373 (9th Cir.1995) ..................................................... 16

*In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .................. 11

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. Apr. 12, 2007) .................. 14, 15

*In re Toys R Us-Delaware, Inc. — Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................................... 15

*In re Washington Public Power Supply System Securities Litig.*, 19 F.3d 1291 (9th Cir. 1994) .............. 10

*Jiminez v. Menzies Aviation, Inc.*, 2016 WL 3231106 (N.D. Cal. June 13, 2016) ................. 19

Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir.1998) ............................................... 16

Marshall v. Northrop Grumman Corp., 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ............... 10

*Mostajo v. Nationwide Mut. Ins. Co.*, 2023 WL 2918657 (E.D. Cal. Apr. 12, 2023) ............... 9

Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles, 2009 WL 9200391 (C.D. Cal. June 24, 2009) ........................................................................................ 10

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523 ................. 15

Nielson v. Sports Auth., No. C–11–4724–SBA, 2012 WL 5941614 (N.D. Cal. Nov. 27, 2012) ............................................................................................................................ 16

*Officers for Justice v. Civil Serv. Comm'n, etc.*, 688 F.2d 615 (9th Cir. 1982) .................. 14

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................... 15

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............... 10

*Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ......................... 9

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..................................................... 19

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)...................... 9, 10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .................................... 14

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.2002) ......................................... 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 538 (9th Cir. 2013) ...................................19, 21

## STATUTES

California Business & Professions Code, § 17200, et seq........................................................ 2

## OTHER AUTHORITIES

5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) ........................................ 16

Newberg on Class Actions § 14.6 (4th ed.2007) .......................................................... 10

Newberg on Class Actions §§ 11.22 (4th ed.) (Thomas West ed., 2002) ........................ 13

The Manual for Complex Litigation, Fourth, at § 21.632 (2004) ...................................... 14

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2

Fed. R. Civ. P. 23 ...............................................................................................13, 18, 22

Fed. R. Civ. P. 23(a) .......................................................................................... 4, 18

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 19

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 19

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 21

Fed. R. Civ. P. 23(a)(4) ........................................................................................21, 22

Fed. R. Civ. P. 23(b) ................................................................................................ 18

Fed. R. Civ. P. 23(b)(2) ............................................................................................ 4

Fed. R. Civ. P. 23(b)(3) .................................................................................... 4, 18, 22, 23

Fed. R. Civ. P. 23(c)(4) ............................................................................................ 4

Fed. R. Civ. P. 23(e) ...........................................................................................13, 14

Fed. R. Civ. P. 23(f) ............................................................................................ 1, 5

Fed. R. Civ. P. 26(f) ................................................................................................ 8

Fed. R. Civ. P. 30(b)(6) ............................................................................................ 2

## I.  <u>INTRODUCTION</u>

In this class action lawsuit, Plaintiff alleges that she and a certified class were charged excessive homeowners' insurance premiums due to Allstate "double counting" built-in garage square footage in calculating insurance premiums. Plaintiff's lawsuit was filed almost five years ago, on August 6, 2020. After years of intensive litigation with attorney time exceeding 2200 hours, the production and review of thousands of pages of documents, the taking and defending of 11 depositions, the certification of a class by this Honorable Court, and the subsequent affirmance by the Ninth Circuit after Allstate's Rule 23(f) Petition, the Parties have reached a resolution that they firmly believe is in their respective best interests.

The details of the settlement are discussed below and set forth in the Class Action Settlement Agreement ("Settlement Agreement") (Ex. A)[1] and proposed Class Notice (Ex. B). Based on the calculations of the Parties in terms of the potential damages, this Settlement would provide class members with more than 86% of their potential maximum recovery. Because there are no guarantees in litigation, such a meaningful recovery may never have come to fruition without this Settlement and the time-intensive efforts of Class Counsel. For this reason, and all those discussed below, Plaintiff, without any objection from Allstate, requests that this Court enter an order preliminarily approving of this settlement and certifying the proposed settlement class. A proposed order granting preliminary approval is attached as Exhibit C.

## II.  <u>BACKGROUND</u>

### A.  Case Overview

On August 6, 2020, Plaintiff filed a Class Action Complaint challenging Allstate's method for calculating a home's square footage. (Doc. 1.) In particular, Plaintiff alleged that for a period of time Allstate was "double-counting" built-in garage space in calculating a home's square footage, which had the effect of artificially and unfairly increasing its California

---

[1] Appendix 1 to the Class Notice, which contains the spreadsheet used to calculate each class members awards is not attached due its size and the fact that it contains Allstate proprietary information. If this Court would like to review the spreadsheet, we propose sending it via email to the Court.

insureds' homeowners' insurance premiums. Allstate filed a Rule 12(b)(6) motion to dismiss Plaintiff's Complaint, which was granted without prejudice on December 23, 2020. (Doc. 40.) Plaintiff subsequently amended, filing a First Amended Complaint ("FAC") on January 22, 2021. (Doc. 41.) Plaintiff's FAC alleged the same primary theory and set forth causes of action for (1) Unfair and Fraudulent Business Practices under California Business & Professions Code, § 17200, et seq.; and (2) Negligence. Allstate filed an Answer and Affirmative Defenses to Plaintiff's FAC, denying all liability, wrongdoing, and damages alleged by Plaintiff. (Doc. 44.)

The Parties engaged in extensive discovery relating to their respective claims and defenses, both individually and as to the putative class. In addition to written discovery and the production of documents by both sides, the Parties took eleven (11) depositions, including the deposition of Plaintiff and Class Representative, Tisha Hilario, the deposition of Plaintiff's expert witness, Kathryn McNally, the deposition of Plaintiff's consultant and former Allstate agent, Steve Mahoney, numerous depositions of current and former employees of Allstate, and the deposition of Allstate's Rule 30(b)(6) designee.

## B. Plaintiff's Theory[2]

Through Plaintiff's discovery efforts, together with a fact-intensive and complicated analysis, Plaintiff determined the nature and scope of Allstate's alleged wrongdoing. To do so, Class Counsel and their consultant had to work through data produced by Allstate on thousands of insurance policies and decipher how, when, and why policy changes were implemented over the course of four years. This time-intensive effort was critical to determining exactly what happened here.

The problem stemmed from changes to Allstate's computer systems used for calculating square footage. For many years the application for insurance completed by agents had only one field for an agent to input a home's square footage and then a separate field for

---

[2] As Allstate continues to deny all allegations of any wrongdoing, we want to be clear that this summary is based on Plaintiff's theory as it developed through discovery.

an agent to input the number of garage bays.[3] For instance, if a home's square footage was 1000 square feet and it had a one-car garage, the total square footage would be calculated as 1288 square feet. The information was collectively used to calculate the size of an insured's home which, in turn, is one of the elements used to determine the amount of a homeowners' premium.

In 2017, Allstate implemented a computer program referred to as RCT-4, which inadvertently reduced the total square footage for certain California homes with built in garages. As a result, using the above example, if the total square footage of a home including a garage was 1288 square feet, RCT-4 mistakenly converted the total square footage to 1000 square feet. When Allstate realized the impact of RCT-4, it implemented Project UIN 203019 ("Project UIN") fix it. The intent of Project UIN was to increase the square footage back to where it was by adding back the built-in garage space mistakenly removed by RCT-4. Project UIN worked as intended for many California homeowners' insurance policies but not all.

During the interim period between RCT-4 and Project UIN, some insurance agents or homeowners, presumably seeing the incorrect decrease in square footage, proactively adjusted the square footage upwards.[4] Project UIN did not impact all California homes with a built-in garage during the class period. Rather, Project UIN only applied to California properties with a built-in garage at the time the project launched in March 2019, including properties where the insurance agent or homeowner proactively adjusted their square footage upward following the implementation of RCT-4. As a result, for those whose square footage was adjusted during this interim period, the effect of Project UIN was to double-count the square footage of built-in garages. Furthering the above example, if the total square footage of a home including a single-car garage was 1288 square feet, and RCT-4 mistakenly reduced the square footage by one garage space (288 square feet), if an agent proactively increased the square footage back to 1288 during the interim period, before Project UIN was implemented, the effect of Project

---

[3] At all relevant times, built-in garages have been calculated by Allstate as 288 square feet per bay, meaning a two-car garage would be calculated as 576 square feet, a three-car garage as 864 square feet, and so on.

[4] This is what happened with Plaintiff, Tisha Hilario.

1    UIN was to add *another* 288 square feet thus incorrectly providing that the home has 1576

2    square feet, instead of 1288 square feet.

3    Boiled down, Plaintiff's essential theory is that Project UIN was overly applied and that

4    Allstate knowingly or negligently disregarded the fact that many policies had already been

5    adjusted to account for the error created by RCT-4. This, according to Plaintiff, caused

6    thousands of Allstate homeowners' insureds to pay inflated premiums.

7    **C.  This Court's Certification of a Class, which was Affirmed by the Ninth**

8    **Circuit**

9    On July 1, 2022, Plaintiff filed a 33-page Motion for Class Certification, seeking

10    certification of a compensatory relief class under Rule 23(b)(3), an injunctive relief class under

11    Rule 23(b)(2), or alternatively certification of common issues under Rule 23(c)(4). (Doc. 74.)

12    Allstate opposed Plaintiff's motion through its filing on August 25, 2022, contending, among

13    other things, that Plaintiff cannot establish class-wide liability, that there is no mechanism to

14    determine whether and to what extent garage-space was miscalculated, that Tisha Hilario's

15    claims were not typical of the class, and that Plaintiff's proposed class definition was overbroad

16    because class members could not be ascertained. (Doc. 77.) Plaintiff, in turn, filed a reply brief

17    in support of class certification (Doc. 86.)

18    A hearing was held before this Court on November 16, 2022. On November 22, 2022,

19    this Court granted Plaintiff's motion (in part) and entered an Order Certifying Class. (Doc.

20    92.) In so doing, this Court narrowed the class definition as follows:

21    "All Allstate California homeowners' insurance policyholders as of March
22    2019, who paid premiums and had at least one built-in garage square, and
23    whose garage square footage was counted twice in calculating insured square
     footage and premiums."

24

25    (Doc. 92.) This Court further found that Plaintiff satisfied the requirements of Rule 23(a) and

26    Rule (b)(3) and certified a class, approving of Tisha Hilario as Class Representative and counsel

27    of record as Class Counsel. This Court declined to certify an injunctive relief class under Rule

28    23(b)(2) and an issues class under Rule 23(c)(4).

On December 6, 2022, Allstate filed with the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") a Petition for Review of Class Certification Order Under Fed. R. Civ. P. 23(f). On December 16, 2022, Plaintiff filed an Answer to Allstate's Petition. On February 23, 2023, the Ninth Circuit granted Allstate's Rule 23(f) Petition for permission to appeal this Court's order granting class certification.

Subsequently, Allstate filed its Opening Brief with the Ninth Circuit on June 23, 2023, Plaintiff filed her Answering Brief on September 11, 2023, and Allstate filed its Reply Brief on November 1, 2023. The matter was argued and submitted to the Ninth Circuit on January 11, 2024. On February 14, 2024, the Ninth Circuit issued an order affirming this Court's order certifying the class.

### D. Mediation and Resolution

The Parties subsequently agreed to a private mediation, which was held on June 5, 2024. The mediation lasted much of the day and did not resolve the case. Over the next several months, however, the Parties continued to engage in negotiations through counsel. Pursuant to the request of the Parties, on October 24, 2024, the ADR Program Case Administrator for the United States District Court for the Northern District of California, assigned a mediator under the ADR Local Rules. Mediator Stephen M. Liacouras was assigned to this matter.

On December 12, 2024, after a full-day in-person mediation in San Francisco with Mediator Liacouras, the Parties reached a settlement in principle. Since that time, the Parties have been negotiating the finer points of the settlement, which have now been reduced to writing in the Class Action Settlement Agreement. Ex. A.

### E. Summary of Settlement Agreement

The Settlement Agreement requires Allstate to fund a total of $4,000,000.00 in exchange for a release of all claims that have been or could have been raised in this lawsuit. Out of that settlement fund, the Settlement Agreement includes: (i) proposed awards to class members; (ii) a service or incentive award to Tisha Hilario, as the Class Representative; and (iii) payment of attorneys' fees and expenses to Class Counsel.

### 1. *Proposed Awards to Class Members*

As part of the settlement process, Allstate produced a spreadsheet identifying 2,517 insureds ("class members") whose built-in garage space was potentially double-counted as a result of Project UIN. The injury to class members arises when the double-counting of garage space leads to an incorrectly higher premium. Because there are many factors that go into a premium calculation — square footage of a home being only one of them — an analysis was applied to determine the "premium impact" of the potential double-counting for each of the 2,517 insureds. The premium impact was first determined on a "per day basis," then that figure was multiplied by the number of days each home was insured with Allstate from the implementation of Project UIN (which varied depending on each policy's renewal date) to the date of the Settlement, December 12, 2024. The allocation to each class member is based upon a series of factors, including each class member's: (a) number of built-in garage bays; (b) the location of the insured property; (c) the length of time each class member paid an allegedly excess premium; and (d) the premium charged.

The identification of class members and premium impact analysis was first performed by Allstate and its actuarial and insurance staff. Class Counsel and their consultant have reviewed the data and analysis compiled by Allstate in copious detail, have received answers to all questions, and agree with both Allstate's identification of class members and the premium analysis. The net result is that through this forensic analytical process the Parties have identified: (i) those actually or potentially harmed through the implementation of Project UIN; and (ii) the potential monetary impact on each.[5] Ultimately, the total potential premium impact across the 2517 class members is $2,902,739.82.

Pursuant to the Settlement Agreement, Allstate has agreed to pay a total fund of four million dollars ($4,000,000.00). The Settlement Agreement further provides that, subject to this Court's approval and without objection from Allstate, Tisha Hilario, as Class

---

[5] We are careful to note that this is a *potential* premium impact, first, because all damages are potential only given the inherent risks in litigation, and second, because this is a settlement and therefore the damages were agreed to as opposed to adjudged.

Representative, would receive a service award of $20,000, and that Class Counsel would receive a fee award equivalent to one-third of the total settlement fund, or $1,333,333.33, along with $168,604.72 in costs and expenses incurred in prosecuting this case and administering the Settlement. The balance available to the class under the Settlement Agreement is $2,498,061.95, which is 86.05% of the potential maximum damages.

Consequently, pursuant to the Settlement Agreement, each class member is to receive 86.05% of their potential damages. In settling a class action case with disputed liability and damages, this is an exceedingly high percentage of recovery. It is the opinion of Class Counsel that the settlement amounts paid to each class member fairly and proportionally approximates each class member's potential damages in light of the claims and defenses. For example, the class member with the highest potential premium impact of $4,936.97 would be awarded $4,248.70. The following are actual proposed awards across various representative damage ranges:

- A class member with potential damages of $2,000.19 would be awarded $1,721.21.
- A class member with potential damages of $1,500.18 would be awarded $1,290.94.
- A class member with potential damages of $1,000.35 would be awarded $860.83.
- A class member with potential damages of $500.06 would be awarded $430.31.
- A class member with potential damages of $250.03 would be awarded $215.16.
- A class member with potential damages of $100.46 would be awarded $86.45.

Finally, in applying this formula (i.e., awarding approx. 86.05% of the potential impact), it was determined that there are twenty (20) settlement awards that would be less than $20.00, the lowest of which is $0.91. For all such awards, the Parties propose an upward adjustment for these twenty (20) class members to $20.00.

The proposed settlement awards to the class members provide a concrete, material,

and substantial benefit. As stated, receiving 86.05% of potential damages in a case of disputed liability is an exceedingly high percentage. Additionally, unlike some settlements, the values that class members will receive here are material and substantial. The average award to class members is just shy of $1000.00 ($992.48). Out of the 2517 proposed settlement awards:

- 98.5% (2478) exceed $50
- 97.4% (2451) exceed $100
- 53.7% (1351) exceed $1000

Also notable is that seventeen (17) awards exceed $2000; twelve (12) exceed $3000; and seven (7) exceed $4000.

The high values achieved in this settlement — both percentagewise compared to the potential damages and as actual payments to individual class members — would not have been realized but for this case and the efforts of the Class Representative and Class Counsel. Allstate's alleged double-counting was something that insureds may have been unlikely to detect because of the relatively minor premium impact on a per year basis. Further, identifying and isolating the nature and scope of the harm was exceedingly complicated. During discovery it was determined that Allstate insured more than 43,000 homes with built-in garages in California, but that only a relatively small percentage of those homes – approximately 5% – may have been negatively impacted by the implementation of Project UIN. Additionally, Allstate mounted a multi-layered defense, contending, among other things, that "there is no class-wide method [to calculate the premium impact, if any,] because there is no linear or uniform scale between square footage and premium; rather, it varies among homeowners." (Doc. 77 at 22.) Plaintiff had to work through Allstate's defenses, first, in attaining certification of a class, second, in prevailing on Allstate's Rule 26(f) interlocutory appeal, and third, in successfully bringing the parties to the table where a favorable resolution was obtained on behalf of the class.

### 2. Service (or Incentive) Award to the Class Representative

Pursuant to the Settlement, subject to this Court's approval, the Class Representative Tisha Hilario, would receive $20,000.00 for her service in this case. Ms. Hilario has been

1    instrumental throughout this case and actively participated in the prosecution of this case
2    having consulted on the preparation of the lawsuit complaint, answering interrogatories and
3    responding to document requests, having her home inspected twice (once by the Allstate's
4    consultant and once by Plaintiff's consultant), preparing for and sitting for a deposition, and
5    physically attending and actively participating in the mediation that resulted in settlement. It is
6    also notable that this case lasted nearly five years, requiring a lengthy engagement by Ms.
7    Hilario. Additionally, much of Allstate's defense was against Ms. Hilario, personally. In
8    particular, Allstate took measurements of Ms. Hilario's home and argued that she had
9    "unpermitted construction" that was never reported to Allstate and had impacted the square
10   footage of her home. (Doc. 77 at 12-13.) While Ms. Hilario was concerned about these
11   accusations and how they may affect her, she did not drop out as a putative class representative
12   and, in the face of an uncertain outcome, dutifully fulfilled her objective in achieving relief on
13   behalf of a class. But for Ms. Hilario, who was the sole class representative in this case, the
14   class members would not receive the substantial monetary result that was achieved.

15          The proposed service award falls within the range of possible approval. *Ross v. U.S.*
16   *Bank Nat. Ass'n*, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010) (approving of a $20,000
17   service award in a class action that settled for $3,500,000); *Mostajo v. Nationwide Mut. Ins. Co.*,
18   2023 WL 2918657 (E.D. Cal. Apr. 12, 2023) (approving a $25,000 service award to each of
19   the class representatives in a class action that settled for $3,800,000); *Thieriot v. Celtic Ins. Co.*,
20   2011 WL 1522385, at *5-6 (N.D. Cal. Apr. 21, 2011) (approving $25,000 service award in a
21   class action that settled for $1,375,000); *Linney v. Cellular Alaska Partnership*, 1997 WL 450064,
22   at *7 (approving $25,000 incentive awards to both class representatives in a class action that
23   settled for $6,000,000). Notably, the proposed service award is only 0.05% of the gross
24   settlement fund. It is also in fair proportion to the settlement awards to class members given
25   that seven (7) class members will receive at least $4,000.00 as an award and seventeen (17) will
26   receive at least $2,000.00.

27
28

1

### 3. Fees and Expenses to Class Counsel

2      Pursuant to the Settlement Agreement, Class Counsel is to receive one-third of the total

3  settlement fund, or $1,333,333.33, along with $168,604.72 in costs and expenses incurred in

4  prosecuting this case and administering the Settlement. The proposed fee percentage "falls

5  within the range of possible approval." *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *5-6 (N.D.

6  Cal. Apr. 21, 2011) (approving a one-third fee in a class action case that settled for $1,375,000);

7  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064 at *7 (N.D. Cal.) (approving a one-third

8  fee in a class action that settled for $6,000,000); In *re Pacific Enterprises Securities Litig.*, 47 F.3d

9  373, 379 (9th Cir. 1995) (approving a one-third fee award in derivative case that settled for

10 $12,000,000). While there is generally considered to be a 25% benchmark used in the Ninth

11 Circuit, in cases like this, with a common fund, the proper metric is whether the fee is

12 "reasonable under the circumstances." *In re Washington Public Power Supply System Securities Litig.*,

13 19 F.3d 1291, 1295 at n.2. (9th Cir. 1994). "[I]n most common fund cases, the award exceeds

14 that benchmark." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. Jan. 8, 2008);

15 *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (

16 "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in

17 class actions."). "Nationally, the average percentage of the fund award in class actions is

18 approximately one-third." *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009

19 WL 9200391, at *4 (C.D. Cal. June 24, 2009). "Empirical studies show that, regardless whether

20 the percentage method or the lodestar method is used, fee awards in class actions average

21 around one-third of the recovery." 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th

22 ed.2007); *see also Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D. Cal. Nov.

23 14, 2007). As a result, "an award of one third is within the range of percentages which courts

24 have considered." *Boyd v. Bank of America Corp.*, 2014 WL 6473804, *10 (C.D. Cal. Nov. 18,

25 2014).

26      The main factor in assessing the reasonableness of fees is the result achieved. *In re*

27 *Heritage Bond Litig.*, 2005 WL 1594389, at * 8 (C.D. Cal. June 10, 2005)("courts have consistently

28 recognized that the result achieved is a major factor be considered in making a fee award); *In*

*re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at * 12 (C.D. Cal. Apr. 23, 2024) (same); *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, (1983) ("the most critical factor is the degree of success obtained"). Here, as discussed above, the recovery achieved for the class – 86.05% of the potential damages – is an excellent result that was achieved after almost five years of hotly contested litigation.

Additional factors are considered at the final approval stage, including: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost in bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir.2002). Plaintiff will address each in detail at the final stage of approval. For present purposes, Plaintiff notes that this matter was taken on a contingency fee basis and lasted nearly five years; it required substantial time (more than 2200 hours) and more than $100,000 expenses; and because recovery was uncertain, given the amount of time and expense involved, Class Counsel took on a significant risk. It should also be noted that Class Counsel's efforts (and those of its consultant's) were critical in uncovering Allstate's alleged wrongdoing, which was subtle, complex, and only applicable to a small fraction of Allstate homeowners' policyholders in California. Allstate disputed Plaintiff's allegations at every step of the way and mounted a vigorous defense; meaning Plaintiff could have received nothing for all of their efforts and expenses. Yet, Plaintiff and Class Counsel persisted in their efforts and obtained a recovery at 86.05% of the potential damages. As a result, Plaintiff submits that the proposed one-third attorney fee — which Allstate does not oppose — is within the range of possible approval.

Finally, pursuant to the Settlement Agreement, Class Counsel would recover $168,604.72 in costs and expenses incurred in prosecuting this case and administering the Settlement. Of that $35,881 is for the Settlement Administrator, Angeion Group. The balance

of the expenses, which will be itemized at the final approval stage, largely consist of expert witness and consultant fees, deposition expenses, and travel and mediation expenses.

### 4. Class Administration Procedure

Pursuant to the Settlement Agreement, Allstate selected the Settlement Administrator. In doing so, Allstate first requested and received bids from three class administration vendors. Based on Allstate's analysis of all the information provided in this bidding process, Allstate selected Angeion. Plaintiff and Class Counsel agree with that selection.

Upon entry of an order preliminarily approving of the settlement, the Parties will provide Angeion with a spreadsheet identifying (i) each class member; (ii) the last known address of each class member; and (iii) the settlement award for each class member. Class Notice will then be sent via U.S. Mail to each class member's last known address, informing them, among other things, of the nature of the settlement, their rights to opt-out or object, and the proposed payments to the Class Representative and Class Counsel. The proposed Class Notice is attached as Exhibit B.

Because all class members are current or former Allstate insureds, the Parties anticipate a high rate of delivery through U.S. Mail. If a mailing is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator will forward the mailing to that address. For other returned mailings, the Settlement Administrator will run the name and address through a commercial database (*e.g.*, Accurint), and should the commercial database show a more current address, the Settlement Administrator will re-mail the returned Class Notice to that address.

Additionally, the Settlement Administrator will establish a website, www.HilarioSettlement.com, that contains copies of the Settlement Agreement, the Class Notice, this Motion for Preliminary Approval, the Preliminary Approval Order, and such other documents and information about the settlement as ordered by the Court or as the Parties agree upon. The Settlement Administrator will also establish a toll-free number for class members to leave a recorded message. Contact information for Class Counsel is also provided

1   in the Class Notice.

2       Pursuant to the Settlement Agreement, each class member will have 45 days after the

3   posting and mailing of the Class Notice to opt-out or object to the Settlement. A class member

4   may opt-out by mailing a statement to the Settlement Administrator containing their name,

5   address, telephone number, and a statement affirming their desire to be excluded from the

6   proposed settlement. A class member may object by mailing a statement to the Settlement

7   Administrator containing their name, address, telephone number (and that of their counsel, if

8   applicable), the specific reason they wish to object, a list of class action cases where they have

9   objected in the last five (5) years. Clear directions for opting-out and objecting are contained

10  in the Class Notice. In the event that more than 10% of the class members opt-out, Allstate

11  has the right to withdraw from and terminate the Settlement.

12      **III.  ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL**

13      A class action may not be dismissed, compromised, or settled without the Court's

14  approval. Judicial proceedings under Rule 23 have led to a defined procedure and specific

15  criteria for approval of class action settlements. Approval of a class settlement under Rule 23(e)

16  consists of three steps:

17      1. Preliminary approval of the proposed settlement and certification of
18         a settlement class;
19      2. Dissemination of notice of the settlement to all affected class
           members; and
20      3.  A formal fairness hearing at which class members may be heard
21         regarding the settlement and at which counsel may introduce
           evidence and present argument concerning the fairness, adequacy,
22         and reasonableness of the settlement.

23

24      This procedure safeguards class members' procedural due process rights and enables

25  the Court to fulfill its role as the guardian of the class interests. *See* Alba Conte, Newberg on

26  Class Actions (4th ed.) §§ 11.22 (Thomas West ed., 2002) (describing class action procedure).

27      As a general matter, there is an overriding public interest in settling litigation, and this

28

is particularly true in class actions. The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1267, 1276 (9th Cir. 1992). Additionally, the Ninth Circuit has recognized that "[t]here is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. July 2, 2013).

Consequently, in assessing a settlement pursuant to Rule 23(e), a court's:

> intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n, etc.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).

At the present stage, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed class action settlement. The Manual for Complex Litigation, Fourth, at § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

In evaluating whether to preliminarily approve of a class action settlement, the relevant inquiry is whether the settlement "falls within the range of possible approval" or "within the range of reasonableness." *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. Apr. 12, 2007).

**A.  The proposed settlement is the result of arm's length negotiations and is presumed to be fair and reasonable**

A settlement following sufficient discovery and an arms-length negotiation is generally presumed to be fair. *In re Toys R Us-Delaware, Inc. — Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014), citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.")

The settlement reached here is the product of extensive settlement negotiations over the course of many months assisted by an accomplished and well-regarded mediator, the Ninth Circuit's Chief Mediator, Stephen M. Liacouras. Settlement came after years of litigation, after a class was certified and then affirmed on appeal, and at a point the Parties were fully aware of their respective strengths and weaknesses and the risks of ongoing litigation. The attorneys involved in settling this case have extensive experience in complex cases, including class actions, and by and through their signatures on this motion hereby attest to the fairness and reasonableness of this settlement.

**B.  The proposed settlement falls "within the range of possible approval" and therefore should be preliminarily approved**

In evaluating the Parties' proposed settlement for purposes of preliminary approval, the Court must determine whether it is within the range of possible approval sufficient to justify sending notice to the class of the proposed settlement and holding a final approval hearing. *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. Apr. 12, 2007). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re Nat'l Football League Players' Concussion Injury Litig.,* 961 F.Supp.2d 708, 714 (E.D. Pa.2014)); *see also Nielson v. Sports Auth.,* No. C–11–4724–SBA, 2012 WL 5941614, at *6 (N.D.

Cal. Nov. 27, 2012). As applied to the present case, this particular factor weighs heavily in support of the settlement.

Class members are receiving an extraordinarily high percentage of their potential relief, approximately 86%. Plaintiff's counsel could not in good conscience reject a settlement in favor of pursuing a slightly higher, albeit uncertain, recovery. Had this case not resolved, Allstate would be moving for summary judgment based on its argument that Ms. Hilario was not over-insured because the actual square footage of her home was at all times higher than the square footage listed on her Allstate policy. If Plaintiff survived summary judgment, there are inherent risks of trial and appeal, together with the time and expense that would involve. Resolving this case now, where the value of the settlement offer is very close to the potential recovery at trial, benefits the class as a whole. For that reason, applying "this most important factor," the settlement should be preliminarily approved.

At the final approval stage, the ultimate question is whether the settlement is "fundamentally fair, adequate, and reasonable." 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) (citing *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 377 (9th Cir.1995) and *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992), *cert. denied.,* 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992)). There are eight factors applicable under Ninth Circuit jurisprudence – referred to as the *Churchill* factors – in assessing the fairness, adequacy, and reasonableness of a settlement:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed and the stage of the proceedings;
> (6) the experience and view of counsel;
> (7) the presence of a governmental participant; and
> (8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998).

Each factor will be discussed in detail at the final approval stage, but to the extent it is useful now, Plaintiff offers the following:

(1)  **The Strength of Plaintiff's Case:** Plaintiff's case is fundamentally strong from the standpoint that certain Allstate insureds' built-in garages in California may have been double counted for purposes of calculating square footage. However, as Allstate would contend if this case moved forward, there is complexity in identifying exactly whose built-in garage was double counted. Through settling the case, the Parties were able to capture those whose garage space was both actually and *potentially* double counted.

(2)  **Risk, Expense, Complexity, and Likely Duration of Further Litigation:** There is clear risk to the class if this case were to proceed through summary judgment, trial, and appeal, and certainly that route would require significant additional expense and probably 2-3 years (through appeal) before resolution. Had the settlement offer been only a small fraction of the class members' potential recovery, it may well have been worth the risk. However, given the recovery for the class members provided through this settlement, there is no sense in taking that risk.

(3)  **Risk of Maintaining Class Action Status Through Trial:** As stated above, Allstate would be moving for summary judgment on Ms. Hilario's claims. Because Ms. Hilario is the lone class representative, if summary judgment were granted than the entire certified class action could be dismissed, eliminating all claims from all class members (including Ms. Hilario).  It is also notable that Allstate had success in getting the Ninth Circuit to grant its Rule 23(f) petition. Such petitions are very rarely granted and, when they are, the district court's ruling is often reversed. While Plaintiff has thus far maintained class status, there is little doubt that Allstate will continue its efforts to decertify it.

(4)  **The Amount Offered in Settlement:** Through this common fund settlement, the amount offered in settlement is 86.05% of the full potential premium impact as calculated by the Parties.

(5)  **Extent of Discovery Completed and Stage of the Proceedings:** Fact discovery has been completed and the Parties have reached a point where they can reliably assess the strengths and weaknesses of their case.

(6)    **The Experience and View of Counsel:** As was demonstrated at the class certification stage, Class Counsel has significant experience with class action litigation. (Doc. 74-43.) Based upon their experience and assessment of this case, Class Counsel firmly believes that resolution of this case as provided under the Settlement Agreement benefits the class and should be finalized.

(7)    **The Presence of a Government Participant:** There is none.

(8)    **The Reaction of Class Members to the Proposed Settlement:** To be determined.

Plaintiff submits that consideration of the eight *Churchill* factors further demonstrates that the settlement "falls within the range of possible approval."

## IV.  <u>THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS</u>

Under Rule 23, class actions may be certified for settlement purposes only. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, for purposes of settlement, Plaintiff's proposed class meets all Rule 23 certification requirements.

Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14. With that said however, the fact that the parties have reached a settlement is a relevant consideration in the class certification analysis. When, as here, the request is for settlement-only class certification, a district court need not inquire whether "trial would present intractable management problems . . . for the proposal is that there be no trial." *Id.* at 593.

### A.  The Parties request a slight modification to the Class Definition

Here, this Court has already certified a class under Rule 23(b)(3). (Doc. 92.). In so doing, the Court defined the class as follows:

> "All Allstate California homeowners' insurance policyholders as of March 2019, who paid premiums and had at least one built-in garage square, and whose garage square footage was counted twice in calculating insured square footage and premiums."

Notice has not been issued to the certified class, first, because the Ninth Circuit accepted Allstate's Rule 23(f) appeal, and second, because the Parties thereafter mediated the case, ultimately leading to the present resolution. Pursuant to the Settlement Agreement, the Parties request that this Court slightly modify the class definition to fit the methodology that was applied to identify class members. The Parties propose the following:

> "All California homeowners policyholders of Allstate where: (a) Allstate's internal records reflect the home to have a built-in garage; (b) Allstate included the policy in its corrective action process called Project UIN 203019 ("Project UIN"); and (c) Project UIN increased the square footage of the home in Allstate's internal records to a level that reflects actual or potential double counting of garage space."

## B. The requirements of Rule 23(a) are satisfied

### 1. Numerosity

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012); *see also Jiminez v. Menzies Aviation, Inc.*, 2016 WL 3231106, at *3 (N.D. Cal. June 13, 2016).

Here, the number of class members identified by the Parties is 2517. This easily satisfies the numerosity requirement.

### 2. Commonality

Commonality demands that there be "questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "For purposes of Rule 23(a)(2), 'event a single common question will do.'" *Jiminez*, 2016 WL 3231106, at *4 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 538, 544 (9th Cir. 2013) ("So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)").

In this Court's Order Certifying Class (Doc 92), it identified several questions of law

and fact that were subject to determination on a common basis:

- Whether Allstate had or has a system-wide policy that [Total Living Area] must include built-in garages, [Furnished Living Area] must not, and built-in garages are always calculated at 288 square feet per garage bay.

- Whether Allstate created Project UIN to add the square footage for built-in garages for Insured Properties, systematically applied it to all properties, and increased [Furnished Living Area] and [Total Living Area] for each property by a multiple of 288 square feet.

- Whether Allstate had knowledge that there was a risk that Project UIN would . . . increase the [Furnished Living Area and/or Total Living Area] . . . by double counting built-in garage space and whether it had the ability to identify properties that had already been adjusted before applying Project UIN.

- Whether Allstate's conduct constituted fraudulent business practices, and whether its conduct was deceptive or unfair.

- Whether Allstate owed a duty of care to class members, and whether it breached that duty by how it calculated and charged premiums.

- "Whether Allstate breached a duty to insureds by implementing RCT3, failing to catch the reduction in garage space, failing to communicating the issue, applying the Project UIN solution to all policies including those previously adjusted, and failing to clearly communicate the fix."

- "Whether any of that conduct constituted unlawful, unfair, or fraudulent business practices under the UCL.

(Doc. 92 at 10-11.)

Ultimately, this Court held that Plaintiff's claims satisfy the commonality requirement. (Doc. 92 at 11.)

### 3. *Typicality*

Typicality is met by showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 349 n.5. As a result, "representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* Indeed, "as courts have repeatedly noted, '[d]iffering factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Heredia v. Sunrise Senior Living, LLC*, 2021 WL 6104188, at *14 (C.D. Cal. Nov. 16, 2021).

Here, the same course of conduct – i.e., the double counting of built-in garage space for those policies that had already been adjusted after Project UIN was implemented – affected Hilario in the same way that it did for the Settlement Class.

In this Court's Order Certifying Class, it found that Plaintiff's claims satisfy the typicality requirement. (Doc. 92 at 13.)

### 4. *Adequacy*

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In consideration of the arguments and evidence set forth by Plaintiff in support of class certification (Doc. 74 at 22-23), in this Court's Order Certifying Class it found that "Hilario is an adequate class representative, and she has no conflicts of interest with other class members." (Doc. 92 at 13.)

With respect to the adequacy of Plaintiff's counsel, Plaintiff fully addressed this issue in their Motion for Class Certification, which is incorporated herein by reference. (Doc. 74 at 23.) Plaintiff has also re-attached the materials submitted to this Court in support of their appointment as class counsel which detail their experience. Exhs. D-G.[6] In this Court's Order Certifying Class it found that "Class Counsel are competent and qualified, and have no conflicts

---

[6] Attorney Jack Prior is no longer employed by Hart McLaughlin & Eldridge, but the content of his Declaration in terms of the time and effort that Hart McLaughlin & Eldridge and Shane Law have put into prosecuting this matter is still applicable.

1  of interest with any class members." (Doc. 92 at 14.)

2  Consequently, this Court held that the adequacy requirements of Rule 23(a)(4) were

3  met. (Doc. 92 at 14.)

4  ### C.  The requirements of Rule 23(b)(3) are satisfied

5  Rule 23(b)(3) provides for certification if "question of law or fact common to class

6  members predominate over any questions affecting only individual members, and that a class

7  action is superior to other available methods for fairly and efficiently adjudicating the

8  controversy. Fed. R. Civ. P. 23(b)(3). In the present case, Plaintiff alleges a course of conduct

9  and practices by Allstate that are common to all class members. "Class actions in which a

10  defendant's uniform policies are challenged generally satisfy the predominance requirement of

11  Rule 23(b)(3) *Benitez v. W. Milling, LLC,* 2020 WL 309200, at *6 (E.D. Cal. Jan. 21, 2020)

12  (collecting cases). Additionally, "[c]ourts have routinely found that claims under the UCL . . .

13  are ideal for class-wide certification." *Heredia*, 2021 WL 6104188, at *10.

14  In this Court's Order Certifying Class it found that "common questions predominate."

15  (Doc. 92 at 15.) In particular, this Court found that Plaintiff's claims stem from Allstate's

16  "generalized application of a 288 square foot multiplier to all policies with built-in garages

17  regardless of whether individual policies had already been upwardly adjusted to account for the

18  garages." *Id.* Further, this Court found that a class action is superior to other methods for

19  adjudicating this case "[b]ecause the questions of law and fact are so similar for each plaintiff

20  here, the allegations of wrongful conduct are so consistent and universal . . ." *Id.* at 17.

21  ### V.  **NOTICE TO THE CLASS**

22  The content of the Proposed Notice, attached as Exhibit B, fully complies with all

23  requirements under Rule 23. The Notice is fair and balanced and easy to understand, and

24  includes all material information, including information regarding the nature of the lawsuit;

25  why there is a settlement and what the classes are; a summary of the substance of the settlement;

26  the procedure and time period opting-out from or objecting to the settlement; and information

27  regarding the fairness hearing. The Notice also discusses the release and the requested attorneys'

28  fees and service awards.

1    Pursuant to the Parties' Settlement Agreement, the Parties will maintain a website that

2   will include, at a minimum, copies of the Settlement Agreement, the Class Notice, the

3   Preliminary Approval Order, and such other documents or materials agreed to by counsel or

4   as otherwise ordered by the Court.

5    **VI. <u>CONCLUSION</u>**

6    For the reasons stated above, Plaintiffs respectfully request that the Court: (1) grant

7   preliminary approval of the proposed settlement described herein; (2) approve the attached

8   Notice and the claims procedure detailed herein; (3) certify the Settlement Class under Rule

9   23(b)(3); and (4) set a schedule for final settlement approval and schedule a fairness hearing.

10

11

12   Dated: July 14, 2025                    By:    /s/ Brian Eldridge

13                                          **SHANE LAW**
                                            David Shane (State Bar No. 109890)
14                                          1000 Drakes Landing Rd #200
                                            Greenbrae, CA 94904-3027
15                                          Telephone: (414) 464-2020
                                            dshane@shanelaw1.com
16

17                                          **HART McLAUGHLIN & ELDRIDGE LLC**
                                            Brian Eldridge (State Bar No. 220822)
18                                          Steven Hart (Pro Hac Vice)
                                            One South Dearborn, Suite 1400
19                                          Chicago, Illinois 60603
                                            Telephone: (312) 955-0545
20                                          beldridge@hmelegal.com
                                            shart@hmelegal.com
21

22                                          *Attorneys for Plaintiff Tisha Hilario, individually and on*
23                                          *behalf of a class of all others similarly situated*

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3      I hereby certify that on July 14, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

4

5                          /s/ *David Shane*
                         David Shane

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28